**STATE of Utah, Plaintiff and Appellee,**

v.

**Mills JOHNSON, Defendant and Appellant.**

**No. 900268.**

Supreme Court of Utah.

July 16, 1993.

Paul Van Dam and Judith S.H. Atherton, Salt Lake City, for the State.

Nathan D. Hult, Logan, for Mills Johnson.

STEWART, Justice:

Mills Johnson pleaded guilty to three counts of sodomy on a child, a first degree felony, and two counts of sexual abuse of a child, a second degree felony. The trial court denied probation and sentenced Johnson to a minimum mandatory term of ten years to life in prison for each sodomy count and to an indeterminate term of one to fifteen years for each sexual abuse count. Johnson appeals his convictions and the denial of probation. We decline to address the issue of the pleas, but reverse the denial of probation and remand for a new sentencing hearing.

The victim was Johnson's twelve-year-old stepdaughter from a common law relationship.[1] After taking the guilty pleas, the trial judge postponed sentencing until a presentence report could be prepared. The sentencing hearing was eventually held on April 27, 1990. After hearing evidence, the trial court ruled that Johnson did not qualify for probation under Utah Code Ann. § 76–5–406.5, the so-called incest exception to minimum mandatory sentences for sex offenders. The sentences imposed were to run concurrently, and the court recommended to the Utah Board of Pardons that Johnson serve a ten-year term.

On appeal, Johnson asserts that the trial court erred in failing to determine whether there was a factual basis for his pleas and

---

1. There is a question as to the marital status of Johnson and the victim's mother. However, for ease in identifying the parties and their relation-ships with each other, we refer to the victim as Johnson's stepdaughter and her mother as his wife.

in concluding that he did not qualify for probation under Utah Code Ann. § 76–5–406.5. He also asserts that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney failed to provide him with the information necessary to make a knowing plea and to present evidence necessary to establish that he qualified for probation.

## I.

■ Johnson argues that his guilty pleas are void because the trial court failed to determine whether there was a factual basis for the pleas as required by *State v. Gibbons*, 740 P.2d 1309 (Utah 1987). *See also State v. Maguire*, 830 P.2d 216 (Utah 1992); *State v. Hoff*, 814 P.2d 1119 (Utah 1991).

■ The State asserts that the issue is not properly before this Court because Johnson did not move to withdraw his guilty plea in the district court.[2] We agree. A defendant is obliged to seek a trial court's ruling on an issue before the issue can be raised in an appellate court. *See State v. Anderson*, 789 P.2d 27, 29 (Utah 1990); *Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah 1989); *State v. Steggell*, 660 P.2d 252, 254 (Utah 1983).

## II.

Sodomy on a child carries a minimum mandatory prison term of five, ten, or fifteen years. Utah Code Ann. § 76–5–403.-1(2). A defendant who commits sodomy on a child may not be granted probation except as provided in § 76–5–406.5. Utah Code Ann. § 76–3–406(1). Section 76–5–406.5 states:

(1) In a case involving rape of a child, attempted rape of a child, or sodomy upon a child involving the actor's genitals and the mouth or anus of the child, where the defendant is the victim's par-ent, stepparent, adoptive parent, or legal guardian who has lived in the household in the role of a parent to the victim for a continuous period of time of at least one year prior to the earliest offense, and the victim was more than five years of age at the time the earliest offense was alleged or proven, execution of sentence may be suspended and probation may be considered only if all of the following circumstances are found by the court to be present and the court in its discretion, considering the circumstances of the offense, including the nature, frequency, and duration of the conduct finds probation or suspension of sentence to be proper:

(a) the defendant did not use a weapon or use force, violence, substantial duress or menace, or threat of harm in committing the offense;

(b) the defendant did not cause bodily injury to the victim during or as a result of the offense and did not cause the victim severe psychological harm;

(c) the defendant, prior to the offense, had not been convicted of any public offense in Utah or elsewhere involving sexual misconduct in the commission of the offense;

(d) the defendant did not commit an offense described in Part 4 of this chapter against any other victim, at the same time, or during the same course of conduct, or previous or subsequent to the instant offense, except where the additional victim is within the same family and the court finds unusual circumstances exist justifying the granting of probation;

(e) the defendant did not use, show, or display pornography or create sexually-related photographs or tape recordings in the course of the offense;

---

**2.** Utah Code Ann. § 77–13–6(2)(b) provides, "A request to withdraw a plea of guilty or no contest is made by motion, and shall be made within 30 days after the entry of the plea." The State asserts that because more than thirty days have passed and Johnson has not moved to withdraw his plea, whatever relief is now available can be sought on a petition for post-conviction relief. The statute "does not restrict the rights of an imprisoned person under Rule 65B(i), Utah Rules of Civil Procedure." Utah Code Ann. § 77–13–6(3). Rule 65B(i) outlines the procedures for post-conviction relief.

(f) the defendant did not act in concert with another offender during the offense or knowingly commit the offense in the presence of a person other than the victim or, with lewd intent to reveal the offense to another;

(g) it is in the victim's best interests that the defendant not be imprisoned;

(h) the defendant has been accepted for mental health treatment in a recognized family sexual abuse treatment center which specializes in dealing with the kind of child sexual abuse occurring in this case;

(i) the defendant, as a condition of probation, will maintain residency outside the home for at least one year beginning with the commencement of treatment, and the defendant, as a condition of probation, will not again take up residency in the home until allowed to do so by order of the court;

(j) rehabilitation of the defendant through treatment is probable;

(k) a jail term of at least 30 days is served prior to treatment and probation is imposed for ten years maximum;

(*l*) the defendant did not encourage, aid, allow, or benefit from any act of prostitution or sexual act by the victim with any other person, or sexual performance by the victim before any other person.

Utah Code Ann. § 76–5–406.5(1) (1990). The burden is on the defendant to establish eligibility for probation by a preponderance of the evidence. § 76–5–406.5(3).

■ The rationale of the probation statute is to keep legally established family relationships intact in appropriate circumstances for the benefit of the nonoffending family members. For example, probation of a sex offender may prevent the economic destitution of innocent family members that may occur if the offender is imprisoned. *See State v. Bastian,* 765 P.2d 902, 903 n. 1 (Utah 1988); *State v. Copeland,* 765 P.2d 1266, 1269 (Utah 1988). Probation may also serve numerous other social, psychological, and educational interests of innocent family members. *See Bastian,* 765

P.2d at 903 n. 1; *Copeland,* 765 P.2d at 1269.

The district judge ruled that Johnson did not qualify as a stepparent under § 76–5–406.5(1) because his relationship with the victim's mother had not been legally solemnized. The court also ruled that Johnson had failed to show by a preponderance of the evidence that he did not cause the victim severe psychological harm as required by subsection (b); that there were no other victims as required by subsection (d); that it was in the victim's best interests that Johnson not be imprisoned as required by subsection (g); and that he had been accepted for treatment in a recognized family abuse treatment center as required by subsection (h).

Johnson asserts that although he and the victim's mother were not formally married, his relationship with her is cognizable as a valid marriage under Utah Code Ann. § 30–1–4.5 and that the trial judge therefore erred in ruling that he was not a stepparent.

■ Section 76–5–406.5(1) states that the defendant must be a "parent, stepparent, adoptive parent, and/or legal guardian." The statute does not distinguish between solemnized marriages and those that are not solemnized but that are otherwise legally recognized. Utah Code Ann. § 30–1–4.5 recognizes certain cohabitational relationships as "legal and valid" marriages. A person who is not the parent of a child and has not entered into a solemnized marriage with a child's parent may still be the "stepparent" of that child under § 76–5–406.5 if the relationship qualifies as a valid marriage under the language of § 30–1–4.5. That statute provides:

(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between two consenting parties who:

(a) are capable of giving consent;

(b) are legally capable of entering a solemnized marriage under the provisions of this chapter;

(c) have cohabited;

(d) mutually assume marital rights, duties, and obligations; and

(e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

(2) The determination or establishment of a marriage under this section must occur during the relationship described in Subsection (1), or within one year following the termination of that relationship. Evidence of a marriage recognizable under this section may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.

■ Under these provisions, a nonsolemnized marriage is deemed lawful if a court or administrative order establishes the facts enumerated in subsections (1)(a) through (e). However, such an order need not be entered prior to the sentencing hearing for an offender to be considered a stepparent under the probation statute. The trial court could have made the requisite factual determinations and entered an order establishing the relationship as a valid marriage when it decided whether Johnson was entitled to probation. In this case, the trial judge erred in ruling that Johnson could not be a "stepparent" without deciding whether his relationship with the victim's mother qualified as a marriage under § 30-1-4.5.

On remand, the trial court should determine whether Johnson's relationship with the victim's mother qualified as a marriage. We note that there are facts in the record that might support such a finding. Throughout the proceedings, the victim was referred to as Johnson's stepdaughter and her mother as his wife. Johnson and the victim's mother had been living together since June 1982, when the victim was four years old. Even though they were never formally married, the mother, as well as her daughter, assumed Johnson's surname.

Johnson also argues that the trial court erred in ruling that he failed to show by a preponderance of the evidence that he did not cause the victim severe psychological harm. § 76-5-406.5(1)(b). Johnson sought to meet his burden by producing letters from both the victim and her mother stating that she had not suffered serious or permanent harm from the abuse. The victim's letter stated that she was not physically harmed in any way by Johnson and that she had not suffered any mental injury as a result of the abuse. The victim recanted earlier statements to investigators that the abuse had been ongoing since she was four years old and stated that the abuse had actually occurred only eight times over a three-year period, beginning when the victim was about eight years old. She wrote that the abuse never included force. She also stated that she did not feel guilty for turning Johnson in and that her only motivation for doing so was to stop the abuse and to get Johnson the help he needed.

The victim's mother's letter stated that her daughter was a straight A student, interacted well with her peers, ate and slept well and, in the mother's opinion, had suffered no real setbacks from the abuse. In addition, a letter from a therapist at Intermountain Sexual Abuse Treatment Center (ISAT), who had seen the victim twice, stated that the victim's protectiveness of her stepfather was not "extreme." The therapist could not say, however, how the abuse affected the victim because they "had very limited time to work together." The State produced no contrary evidence with respect to any psychological harm the victim might have suffered.

After reviewing the evidence, the trial court stated:

I don't know what psychological harm has occurred to this young child. There have been no experts here [to] testify, either for the defendant or the prosecution. The young lady testified herself through letters to me she's doing fine. She seems to be a healthy, vigorous young girl. The state has been unable for one reason or another to bring testi-

mony to that point because the child has been in California. The defense has not brought testimony forth. *The burden is entirely upon the defendant to show by a preponderance of the evidence that she [has] not had psychological harm.* I'm aware of the decision by the Utah Supreme Court. I'm aware of the legislature literature on this matter that this kind of abuse cannot but substantially harm psychologically and emotionally the victim.

(Emphasis added.)

■ Of course sexual abuse is harmful, but the nature and extent of the harm varies with each victim and the circumstances of the crime. The probation statute does not require an abuser to show an absence of all psychological harm; such a burden, because of the nature of the crime, would be impossible to establish. Rather, the statute requires a showing of the absence of *"severe* psychological harm." By using the term "severe psychological harm," the Legislature recognized that there are differences in the degree of the harm inflicted and that only those crimes that produce the more severe kinds of permanent harm disqualify an offender who otherwise qualifies for probation.

■ Based on general statements about the effects of child sexual abuse in the literature, the trial court found that the victim had been harmed. The trial court did not find, however, that there was *severe* psychological harm to the victim in this case. Although the trial court found that there was "substantial psychological harm," that does not equate to "severe psychological harm," which is the standard fixed by the statute. On remand, the trial court should determine whether the victim indeed suffered *severe* psychological harm from the abuse.[3]

Johnson next argues that the trial court erred in admitting unproven allegations that there was another victim and in placing on him the burden of refuting allegations based on double and triple hearsay. Section 76–5–406.5(1)(d) provides that to grant probation, the court must find that

> the defendant did not commit an offense described in Part 4 of this chapter against any other victim, at the same time, or during the same course of conduct, or previous or subsequent to the instant offense, except where the additional victim is within the same family and the court finds unusual circumstances exist justifying the granting of probation.

Part 4 refers to criminal sexual offenses. *See* Utah Code Ann. §§ 76–5–401 to –411 (1990).

At the sentencing hearing, the State presented a report prepared by ISAT which concluded that Johnson had sexually abused his four-year-old niece and recommended that she receive therapy. Letters by the niece's mother and grandfather forwarded to the trial judge made the same allegation. The ISAT report indicated that the niece had stated in three interviews that Johnson had touched her genitals on one occasion. In the first and third interviews, the child stated that the touching happened in the presence of her parents, who told Johnson to stop. In the second interview, she said that her parents had not seen the touching but that she had told Johnson, "No." Initially, the niece stated that Johnson had touched her over her clothes; in the second interview, she said that the touching had happened under her panties; and in the third interview she could not remember whether her panties were on.

The allegation that Johnson abused his niece arose in November 1989 when the niece asked her mother whether "Uncle Mills" was still in jail. When the mother responded affirmatively, the niece said, "Good because he touched my bottom and it hurt." At the time, the niece refused to

---

**3.** Johnson contends that the trial court impliedly ruled that he could meet his burden under subsection (1)(b) only by producing expert evidence that the victim had not suffered severe psychological harm. We do not read the court's ruling to require expert evidence. In any event, while expert evidence might be beneficial in determining the extent of a victim's psychological harm, it is not required by subsection (1)(b).

elaborate on her comment. The mother told the ISAT interviewer that Johnson had the opportunity to abuse his niece because he had tended her several times. However, the niece told the interviewer that Johnson never tended her. Johnson, his wife, and his stepdaughter denied that he had ever tended his niece or that he had ever been left alone with her.

The ISAT interviewer concluded that the niece had been sexually abused and that the abuser was probably Johnson. The interviewer's conclusion was based in large part on collateral information supplied by the child's mother indicating that the girl "has experienced behavioral events indicative of a stress reaction which have often been found in sexual abuse victims." These "behavioral events" referred to the niece's reported withdrawal from adults she was formerly close to, depression, temper tantrums, arguing, clinging, and bed-wetting.[4]

The State conceded that it did not intend to prosecute Johnson for the alleged abuse of his niece, but argued that "there is more than a preponderance of evidence to suggest that Mills Johnson committed sexual offenses upon this child, a second victim." The court stated that "the obligation is that of the defendant to show by a preponderance of the evidence that [she] was not another victim" and found that Johnson had not met this burden. Johnson challenges the reliability of the evidence that he abused his niece and asserts that his right to due process was violated when the trial court placed on him the burden of disproving the unreliable claims of a second victim.

■ Due process does not impose the full range of trial procedures designed to sift truth from error in sentencing proceedings. *State v. Howell*, 707 P.2d 115, 117 (Utah 1985); *see also United States v. Weston*, 448 F.2d 626, 631 (9th Cir.1971). Evidence that is inadmissible during the guilt phase of a trial may be admissible for sentencing purposes. *Howell*, 707 P.2d at 117; *United States v. Baylin*, 696 F.2d 1030, 1039 (3d Cir.1982); *Weston*, 448 F.2d at 631. This does not mean, however, that there is no requirement that the evidence presented in sentencing procedures be reliable. *United States v. Miele*, 989 F.2d 659, 663 (3d Cir.1993). The due process clause in both the United States and Utah Constitutions "requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence." *Howell*, 707 P.2d at 118; *see, e.g., Baylin*, 696 F.2d at 1040; *Weston*, 448 F.2d at 634; *see also State v. Casarez*, 656 P.2d 1005, 1007 (Utah 1982); *State v. Lipsky*, 608 P.2d 1241, 1248 (Utah 1980) (plurality opinion); *State v. Brown*, 607 P.2d 261 (Utah 1980) (opinion of Wilkins, J., joined in part by Maughan, J., and Stewart, J., concurring in the judgment). The need for evidentiary reliability in sentencing proceedings is greater when specific factual issues must be resolved.

■ In our view, the ISAT report does not rise to minimum standards of reliability. The report consists solely of double, and even triple, hearsay. For example, the ISAT report, which is itself hearsay, summarizes the statements made by the niece during the interviews. The report then relates a summary of the mother's description to the ISAT interviewer of statements made by the niece. Although hearsay evidence can be admissible in a sentencing proceeding, double hearsay is so inherently unreliable and presents such a high probability for inaccuracy that it cannot stand alone as the basis for sentencing. In *State v. Brown*, 607 P.2d 261, 270 (Utah 1980), a defendant's death sentence was set aside partially because a prosecutor had been allowed to testify in the penalty phase regarding the substance of hearsay statements made by a witness in another trial. Justice Wilkins observed that "[w]hether the testimony of Watson was accurate or not, it was hearsay on admissible hearsay"

---

**4.** The ISAT report also noted that the niece's parents had separated for about eight months, beginning in December 1988. The parents had reunited by the time of the interviews in January 1990. A letter from Johnson's wife stated that the niece's parents had a stormy relationship and that she had witnessed physical altercations between the two.

and because of its lack of probative value, it should not have been admitted in the sentencing phase. *Brown*, 607 P.2d at 270 (opinion of Wilkins, J., with Maughan, J., concurring in this part of the opinion, and Stewart, J., concurring in the judgment).

The United States Court of Appeals for the Ninth Circuit reached a similar conclusion in *United States v. Weston*, 448 F.2d 626 (9th Cir.1971). The defendant there was convicted of receiving, concealing, and transporting heroin. The presentence report repeated the opinion of two unidentified narcotics agents that the defendant had been the chief supplier of heroin to the western Washington area. The report contained no factual basis for the agents' conclusion other than an unsworn statement of one agent that an informant had given him some information lending partial support to the charge. The district court placed the burden on the defendant to disprove the allegations in the presentence report. Holding that this type of hearsay on hearsay could not serve as a basis for sentencing and that the defendant was not required to prove the allegations, the court stated:

> It is tantamount to saying that once a defendant has been convicted of offense A, narcotics agents can say to the probation officer, and the probation officer can say to the judge, "We think that she is guilty of much more serious offense B, although all we have to go on is an informer's report," and the judge can then say to the defendant, "You say it isn't so; prove that to me!" In addition to the difficulty of "proving a negative," we think it a great miscarriage of justice to expect Weston or her attorney to assume the burden and expense of proving to the court that she is not the large scale dealer that the anonymous informant says that she is.

In *Townsend v. Burke* [334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948)], the Supreme Court made it clear that a sentence cannot be predicated on false information. We extend it but little in holding that a sentence cannot be predicated on information of so little val-ue as that here involved. A rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process. *Id.* at 634.

The United States Court of Appeals for the Third Circuit applied the same reasoning, holding that "as a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability beyond mere allegation." *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir.1982). Evidentiary reliability in sentencing is also required by the United States Sentencing Guidelines, which require that information used as a basis for sentencing must have "sufficient indicia of reliability to support its probable accuracy." *United States v. Miele*, 989 F.2d 659, 663 (3d Cir.1993).

■ The ISAT report is based on the same type of inherently unreliable evidence as that presented in *Brown* and *Weston*. Not only did the report consist almost entirely of double and triple hearsay, but also the hearsay statements contained numerous internal inconsistencies and speculative conclusions based on incomplete information and questionable factual assumptions. For example, the interviewer concluded that the niece had been abused because she exhibited behaviors often found in sexual abuse victims, such as withdrawal from adults, depression, temper tantrums, arguing, clinging, and bed-wetting, but the interviewer ignored the effects on the niece of the unhappy relationship that her parents had and their eight-month separation, which corresponded with the appearance of the child's symptoms. Those events could have been responsible for the child's behavior. The letters from the mother and grandfather are also unreliable because they only contain double hearsay accounts of statements by the niece, descriptions of her behavior the cause of which is ambiguous, and the otherwise unsubstantiated assertion that Johnson abused her.

■ Because the evidence that the defendant sexually abused a second victim was highly unreliable, the trial court erred

in considering that evidence for sentencing purposes. The trial court also erred in placing the burden on Johnson to disprove the evidence, such as it was, that he had abused a second child. Although defendant had the burden of establishing his eligibility for probation under all the fact-based criteria in the statute, he did not have to disprove any and all allegations of other crimes based on rumor or other unreliable evidence. The burden of proving a negative is nearly impossible to meet. The difficulty is compounded when proof of the negative can be rebutted by hearsay and rumor. To require a defendant to assume the burden of disproving highly unreliable evidence might well violate due process. *See State v. Howell,* 707 P.2d 115, 118 (Utah 1985); *State v. Casarez,* 656 P.2d 1005, 1007 (Utah 1982); *State v. Lipsky,* 608 P.2d 1241, 1248 (Utah 1980).

 To effectuate legislative intent and to avoid possible constitutional conflicts, we construe § 76–5–406.5(1)(d) to mean that a defendant makes a prima facie case that he has not abused another child by showing that the evidence before the court on the trial of the crime or crimes for which he was convicted did not reliably show similar criminal conduct against another victim and that he has not been convicted of another sexual offense against a child. The State may then present evidence of other victims, but the evidence must have some inherent reliability. The defendant may, of course, challenge the reliability of that evidence. On remand, the State may present reliable evidence, if it can, of a second victim, and the court should reconsider the issue in light of any new evidence.

 Subsection (1)(g) requires that it must be in the victim's best interests that the defendant not be incarcerated. With respect to this requirement, the trial court considered the victim's letters to the court which stated that it was in her best interests for Johnson to be released from prison and placed in a treatment program. How-

ever, the court found that "there's been no testimony here of an expert nature that she'd be benefitted by [Johnson] not being incarcerated." The court erred in concluding that expert testimony was required to prove the best interests of the victim. Although expert testimony might well be relevant, nothing in subsection (1)(g) or in the remainder of the statute indicates that expert evidence is necessary. Evidence from a parent, the victim, and those close to the victim, as well as evidence concerning the circumstances of the victim and his or her family, may prove what a victim's best interests are without the aid of expert testimony.

 A primary purpose of the probation statute is to avoid compounding the harm already suffered while protecting the victim from future abuse. The trial judge must determine whether the risk of further abuse outweighs the harm if incarceration would result in the collapse of a family as a social and economic unit.

Some evidence before the trial court supported the conclusion that it would be in the victim's best interests for Johnson to be placed in treatment on probation. Letters from the twelve-year-old victim and her mother indicated that both believed the victim's best interests would be better served if Johnson were treated and integrated back into the family as soon as possible. Johnson's wife wrote that he had often worked two and three jobs at a time to provide for the needs of his family. The presentence report stated that at the time of arrest, Johnson was self-employed as the owner and operator of a cafe, which the arrest forced him to close. Johnson had no other source of income or assets with which to support his family. His wife was preparing to file bankruptcy to discharge the family's debts. A letter from the victim's therapist at ISAT stated that the victim's protection of her father was not extreme. Indeed, the presentence report recommended treatment over incarceration.[5]

---

5. The presentence investigator later recommended to the trial court that Johnson be committed to the Utah State Prison. The reason for

the change is not clear. It appears, however, that the investigator believed that Johnson did not qualify for probation under the statute and

No evidence was presented that it would not be in the victim's best interest for Johnson to receive probation.

It is not, however, for this Court to weigh the relevant risks. Because the trial court apparently believed that expert testimony was required by subsection (1)(g), we remand for reconsideration of whether it is in the victim's best interests for Johnson to be incarcerated and placed on probation with appropriate treatment.

 Johnson next argues that the trial judge erred in finding that he had not been accepted into a recognized sexual abuse treatment center as required by subsection (1)(h). The trial court found:

> I do not know whether the defendant is accept[ed] at this point in a treatment program. I make a finding that at one time he was. I assume that he still is. But there has not been a preponderance of the evidence shown here that he is. That in light of the fact that the defendant is aware of the other allegations and possible other charges as much as two months ago.

Thus, although the trial court found that Johnson had been accepted into a treatment program, it also found that he was not eligible under subsection (1)(h) because of the allegation of a second victim. As already stated, the evidence that Johnson had abused a second victim was unreliable. Significantly, neither the initial presentence report nor the ISAT report recommended that Johnson be incarcerated, and neither suggested that Johnson would no longer be acceptable at a treatment facility. On this record, therefore, the finding that Johnson was not accepted in a treatment program was clearly erroneous.

 Even if the requirements of subsections (1)(a) through (1)(*l*) are met, the trial court still has discretion under § 76–5–406.5(1) to deny probation upon consideration of "the circumstances of the offense, including the nature, frequency, and duration of the conduct." The trial court found that the frequency of the acts was uncertain in view of the victim's recantation but that the duration extended over a long period of time. On remand, the trial court should apply the various standards set out in the statute in light of this opinion before it addresses the ultimate conclusion of whether defendant should be allowed probation. Proper resolution of those issues is a prerequisite to the proper exercise of discretion.

### III.

 Johnson contends that he received ineffective assistance of counsel due to counsel's failure to thoroughly discuss with him the facts of the case and to arrange for him to view a video tape of an investigator's interview of his stepdaughter. This, he asserts, resulted in his having inadequate information to make a knowing plea. Johnson also asserts that he received ineffective assistance of counsel with respect to the sentencing proceeding. Based on our review of the record, we disagree.[6]

---

that the frequency and duration of the abuse indicated a prison term, although these concerns were also expressed in the initial presentence report. The change thus appears to have resulted from a belief that Johnson was not eligible for probation under the statute.

**6.** Although we have declined to address the issue of whether the trial court strictly complied with Rule 11 of the Utah Rules of Criminal Procedure because defendant failed to move to withdraw his guilty plea, we note that the trial judge read the charges in the information to defendant and explained the elements of each of the counts of sodomy on a child in terms of the dates of occurrence, who the child and the actor were, the conduct alleged and the intent that Johnson must have had. A similar explanation was made for the charges of sexual abuse of a child. Later, the following colloquy occurred:

> The Court: Is there any question in your mind as to the elements of those five offenses which I have read to you and have reviewed with you?
> Mr. Johnson: None.
> The Court: You understand that plea of guilty to these counts or those admits each of the elements of those offenses?
> Mr. Johnson: Yes, I do.

The record also shows that the conduct Johnson admitted fit the elements of the crimes of sodomy on a child and sexual abuse of a child, that he understood the relationship of the elements of the crime to the facts alleged, and that the trial court made a factual determination as required by *State v. Gibbons*, 740 P.2d 1309 (Utah

Counsel complied with the mandate to render effective assistance.

Reversed and remanded for reconsideration in light of this opinion.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

1987). Thus, Johnson's pleas met the constitutional requirement that they be knowingly and voluntarily made, and counsel was not deficient in this respect.