939 P.2d 196 (1997)
STATE of Utah, In the Interest of W.S. and J.S., persons under eighteen years of age.
J.S., Defendant and Appellant,
v.
STATE of Utah, Plaintiff and Appellee.
No. 960477-CA.
Court of Appeals of Utah.
May 30, 1997.
*198 Loren M. Lambert, Richardson, Packard & Lambert, Salt Lake City, for Defendant and Appellant.
Jan Graham, Atty. Gen. and Jeffrey S. Buckner, Asst. Atty. Gen., Salt Lake City, for Plaintiff and Appellee.
Elizabeth M. Knight, Salt Lake City, Guardian Ad Litem.
Before WILKINS, Associate Presiding Judge, and BENCH and JACKSON, JJ.

OPINION
BENCH, Judge:
Appellant J.S. appeals the juvenile court's order that her children W.S. and J.S. remain in the custody of the Division of Child and Family Services (DCFS). We remand for a new dispositional hearing.

BACKGROUND
Appellant is the natural mother and custodial parent of W.S. and J.S. On March 6, 1996, appellant drove into a shopping center parking lot with W.S., then four years old, and J.S., then three years old. Appellant left W.S. and J.S. in the car while she went into a store. While appellant was in the store, W.S. and J.S. found a "Bic-type" cigarette lighter in the car and started the back seat of the car on fire. Smoke was coming from inside the car and the children had their heads hanging out of the front driver side window of the car when two passersby pulled the children out.
An ambulance and fire engine arrived and firefighters extinguished the fire. Officer McLam of the West Jordan Police Department also arrived and told appellant to remain at the scene until he could gather statements from her and other witnesses. The firefighters apparently made a cursory examination of the two children soon after arriving, but because witnesses stated the children may have been breathing in smoke, the firefighters wanted to make a closer examination of the children. One of the firefighters testified that appellant would not let them reexamine the children because she did not have insurance to pay for medical examinations or ambulance services.
Appellant and the children left the scene and began to walk home. Two firefighters caught up with appellant and her children to more closely examine the children. Appellant was upset that the firefighters had pursued her. A firefighter testified that appellant said, "Fine, take them. That's what you want," and started to walk away. One of the firefighters stepped in front of appellant and told her he would not let her leave the children there. When appellant stepped around the firefighter and continued walking, the firefighter grabbed appellant's jacket sleeve to stop her, but let her go after appellant said he was assaulting her.
After appellant left the scene, the firefighter more thoroughly examined the children and determined that they were uninjured. Officer McLam thereafter arrested appellant for failing to obey a lawful order to remain at the scene, and took appellant, W.S., and J.S. to the police station.
At the police station, appellant was booked and released after posting bail. DCFS placed the children into shelter. After a shelter hearing, the court found proof by a preponderance of the evidence that "substantial danger to the physical health and/or safety of the children existed" and that appellant's "actions and behavior were highly inappropriate and neglectful." The court further held that the situation justified removal without providing preplacement services. The court determined that "the mother needed assessment and evaluation for mental stability in that she reacted most inappropriately under the circumstances." The court ordered that the children remain in the temporary legal custody of DCFS pending the adjudication hearing and that DCFS offer the mother services determined to be in her best interests.
At the adjudication hearing, the court made findings of fact similar to those made at the shelter hearing and concluded by clear and convincing evidence that W.S. and J.S. were neglected, that custody should remain with DCFS, and that appellant would continue to be allowed supervised visitation.
*199 Appellant requested that the dispositional hearing be conducted the day after adjudication. Among the documents submitted to the court just prior to disposition was a Predisposition Court Report prepared by a DCFS caseworker. The report recounted the past history of referrals to Child Protective Services (CPS), stated concerns, and made recommendations for disposition to the court.
The court granted a ten-minute recess to allow appellant and her counsel the opportunity to review the report before cross-examining the caseworker who prepared it. The caseworker testified that she had no personal knowledge of the information in her report. The record reflects that in preparing her report, the caseworker relied on CPS referral records and assessments of the children, as well as other secondary sources. During cross-examination, the caseworker admitted that she did not know the names of the CPS investigators upon whose reports she relied. She also did not know who made various substantiated and unsubstantiated referrals, or the specifics of many of the referrals of neglect or abuse.
After cross-examining the caseworker who prepared the report, appellant's counsel asked for another recess to prepare his client to testify and rebut information in the predisposition report. The trial court denied the request for a recess and did not permit appellant to testify. The trial court's disposition ordered DCFS to retain custody of W.S. and J.S. and to establish a service plan. This appeal followed.

ISSUES
Appellant claims the following errors on appeal: (1) there was insufficient evidence to justify continued removal of J.S. and W.S. from appellant's custody; (2) the trial court abused its discretion in permitting only supervised visitation; (3) the trial court erroneously allowed unreliable hearsay at the dispositional hearing; and (4) the trial court abused its discretion by denying appellant's request for time to review the pre-disposition report and by denying appellant the opportunity to be heard at the dispositional hearing.

ANALYSIS

Sufficiency of Evidence
Appellant claims there was insufficient evidence for continued removal of her children from her custody. Appellant essentially argues that one incident of neglect does not warrant deprivation of custody. "The challenge to a factual finding must be conducted in two steps: (1) appellant must first marshal all the evidence that supports the finding, and (2) then demonstrate to us that, despite this evidence, the finding is so lacking in support as to be `against the clear weight of the evidence' and, thus, clearly erroneous." State ex rel. D.M. & N.M., 790 P.2d 562, 567 (Utah.Ct.App.1990) (quoting Doelle v. Bradley, 784 P.2d 1176, 1178 (Utah 1989)).
Appellant has marshaled the evidence, but has not shown that the court's findings (both in the shelter hearing and at adjudication) are against the clear weight of the evidence. The evidence shows that appellant left young children unattended in a car while she went shopping, during which time the children located a lighter and started the inside of the car on fire. In the face of this near tragedy, appellant was uncooperative with paramedics who wanted to check W.S. and J.S. for smoke inhalation. Appellant further displayed neglect by leaving the children with emergency personnel and walking away from the scene. In light of the evidence presented at the shelter hearing and adjudication, we are convinced there was sufficient evidence of neglect, and we cannot say the trial court erred in continuing custody deprivation.

Supervised Visitation
Appellant argues that the court abused its discretion in ordering that appellant be restricted to supervised visitation. The standard governing visitation orders is the best interest of the children. See Peterson v. Peterson, 818 P.2d 1305, 1308 (Utah. Ct.App.1991); see also Utah Code Ann. § 78-3a-307(2) (1996) (providing at shelter hearing, "[t]he court may also provide for reasonable visitation with the parent from whose custody the child was removed, if that is in the best interest of the child"). The *200 trial court is specifically afforded broad discretion in restricting visitation. See Peterson, 818 P.2d at 1308. An order restricting visitation will not be disturbed as long as "discretion is exercised within the confines of the legal standards we have set ... and the facts and reasons for the decision are set forth fully in appropriate findings and conclusions." Davis v. Davis, 749 P.2d 647, 648 (Utah 1988).
The trial court's findings detail appellant's neglect in leaving the children unattended in the car with a lighter and her failure to permit emergency personnel to make appropriate examination of the children for possible injury. The DCFS caseworker who prepared the pre-disposition report recommended supervised visitation because she "[could not] guarantee the safety of the children in an unsupervised visit." In view of the legal standard to fashion visitation in the best interest of the children, we do not consider the court's order of supervised visitation an abuse of discretion.

Hearsay
Appellant alleges the pre-disposition report contained inadmissible hearsay. Appellant claims the report was inadmissible because the caseworker who prepared it had no personal knowledge of the alleged incidents of abuse and neglect, nor did she know the substance and particulars of the allegations. The State counters that the reports relied upon in preparing the pre-disposition report were admissible hearsay under Rules 803(6) (records of regularly conducted activity)[1] and 803(8) (public records and reports) of the Utah Rules of Evidence.
Rule 43(a) of the Utah Rules of Juvenile Procedure provides: "Except as set forth herein or as otherwise provided by law, the juvenile court shall adhere to the Utah Rules of Evidence." Further, Rule 46(b) states, "The court may receive any information that is relevant to the disposition of the case including reliable hearsay and opinions." Utah R. Juv. P. 46(b) (emphasis added). Hearsay is reliable, and hence admissible, when it falls under one of the exceptions to the hearsay rules. See 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 802.03[3][a] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997) ("In various ways each exception to the hearsay rule meets the tests of necessity and reliability."); see also State v. Lovell, 758 P.2d 909, 913-14 (Utah 1988) (stating "testimony of an unavailable witness is presumed to be reliable when it clearly falls within an exception to the hearsay rule").
The State asserts that the pre-disposition report is admissible under Rule 803(8) of the Utah Rules of Evidence as a public record and report.[2] Rule 803(8) provides as follows:
(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
For documents to be admissible under Rule 803(8), the preparer must be a public official who made the report within the scope of his or her duty. See Yacht Club v. Utah Liquor Control Comm'n, 681 P.2d 1224, 1226-27 (Utah 1984) (holding toxicology report prepared by state chemist was admissible under predecessor of Rule 803(8)). In the instant case, foundation for the entry of the pre-disposition report came on cross-examination *201 when the caseworker stated she prepared the pre-disposition report using:
CPS records that we have as we keep as a matter of business and record-keeping. I pulled the file on the family ... and reviewed each of the referrals that have been made to CPS. I also used the assessments that were done on both the children, both J and W....
Because the information relied upon in the pre-disposition report came from government employees pursuant to their employment duties with Child Protective Services, see Utah Code Ann. § 62A-4A-409 (1997), the report was properly admitted pursuant to Rule 803(8).[3]
In the course of the dispositional hearing, however, appellant objected repeatedly that the admission of the pre-disposition report violated due process because the caseworker who prepared the report had no personal knowledge of the CPS investigations cited in the report, and she knew little of the substance and particulars of the allegations. The caseworker's lack of personal knowledge deprived appellant of any meaningful cross-examination. The pre-disposition report was merely a summary of various CPS workers' investigative reports based on what various declarants (unknown to the caseworker who prepared the report) had told CPS investigators. Further, the caseworker who prepared the pre-disposition report was the only person to testify at the disposition hearing. The record reflects that the caseworker's testimony related only to her summary of the CPS records and other double hearsay information.[4]
While double hearsay is admissible pursuant to Rule 805 of the Utah Rules of Evidence, it may not be the sole basis for disposition. Cf. State v. Johnson, 856 P.2d 1064, 1071 (Utah 1993) ("Although hearsay evidence can be admissible in a sentencing proceeding, double hearsay is so inherently unreliable and presents such a high probability for inaccuracy that it cannot stand alone as the basis for sentencing."). We conclude that the Johnson analysis of double hearsay is also applicable to the dispositional phase in juvenile court. Parties are allowed to cross-examine the preparer of the pre-disposition report. See Utah R. Juv. P. 46. But where a witness has little or no personal knowledge of underlying allegations, he or she cannot be effectively cross-examined. Thus, although the pre-disposition report was admissible as a public record or report pursuant to Rule 803(8) of the Utah Rules of Evidence, the court could not base its disposition order solely on the pre-disposition report.

Opportunity to be Heard
Appellant also contends the trial court erred in not allowing her to testify to rebut incidents cited in the pre-disposition report prepared by the DCFS caseworker. We agree.
After cross-examining the caseworker who prepared the report, appellant's counsel asked for another recess to review the predisposition report because appellant wanted to testify and rebut what she considered false or inaccurate information in the pre-disposition report. The court would not allow appellant to testify, stating "it's not going to materially change the outcome." Instead, the court stated it would allow appellant to *202 object in writing to any treatment plan ordered by the court, and to "request any further hearing if you deem it appropriate." The court then immediately made its dispositional order.
When appellant testified at the adjudicatory phase, the pre-disposition report had not yet been prepared. Thus, appellant could not have addressed the allegations and concerns contained in the pre-disposition report when she testified at adjudication. Appellant should have been afforded an opportunity to be heard at the dispositional hearing. Rule 46(a) of the Utah Rules of Juvenile Procedure explicitly provides, with our emphasis, that: "[d]isposition hearings shall be conducted in an informal manner to facilitate the opportunity for all participants to be heard."
Not only was it contrary to Rule 46 of the Utah Rules of Juvenile Procedure to deny appellant the right to testify and present evidence, it also was a denial of due process. See State ex rel. Juvenile Department v. Walen, 97 Or.App. 151, 775 P.2d 884, vacated as moot, 785 P.2d 360 (Or.Ct.App. 1989). Cf. State ex rel. Juvenile Dep't v. Swift, 74 Or.App. 718, 704 P.2d 139, 139 (1985) (remanding case for disposition on due process grounds because juvenile was not allowed to testify at disposition on forgery charges); In re JBS, 696 S.W.2d 223, 225 (Tex.App.1985) (holding juvenile delinquent not allowed to present rebuttal testimony at proceedings to modify disposition was denied due process and fair treatment). In Walen, the Oregon juvenile court granted the State's petition for jurisdiction over a newborn child at the adjudicative phase. Walen, 775 P.2d at 887. At disposition, the court denied the mother the opportunity to testify and present other witnesses. See id. at 888. On appeal, the Oregon Court of Appeals remanded the case for a new dispositional hearing because, although the mother had an opportunity to present evidence at the adjudicative phase, she was denied the opportunity to present evidence at disposition. Id. "[D]ue process requires that a parent be given a meaningful opportunity to be heard by submitting testimony herself and by witnesses." Id.[5] We agree with the Walen court's due process analysis.
Appellant therefore should have been allowed to be heard at the dispositional hearing.

CONCLUSION
We conclude that there was sufficient evidence to support the trial court's decision to keep W.S. and J.S. in continued custody of DCFS. We also conclude that the court's order of supervised visitation was appropriate and that the pre-disposition report was properly before the court. However, it was improper for disposition to be based solely on the pre-disposition report, which was solely double hearsay. It was also improper to deny appellant the right to testify and be heard at disposition. We therefore remand for a new dispositional hearing at which appellant may testify and have the opportunity to be heard. The dispositional hearing on remand shall be conducted as an original dispositional hearing.
WILKINS, Associate P.J., and JACKSON, J., concur.
NOTES
[1] In light of incomplete foundation, we summarily hold that the pre-disposition report could not be properly admitted under Rule 803(6). See Klinger v. Kightly, 889 P.2d 1372, 1376-78 (Utah. Ct.App.1995).
[2] It is appropriate to uphold the admission of the pre-disposition report under Rule 803(8) even if that was not the basis specified at trial, as long as the elements of the rule were established. See United States v. Wilkinson, 804 F.Supp. 263, 266-68 (D.Utah 1992).
[3] Although foundation testimony was not extensive, it was sufficient. The public records and reports exception to the hearsay rule (Rule 803(8)) is premised on the idea that "public employees presumably are diligent in gathering and recording information for their employer, the government." Edward J. Imwinkelried, Evidentiary Foundations 291 (3d ed.1995). Under usual circumstances, "[s]ince the assurances of accuracy are usually even greater for public records than for regular business records, the proponent is not required to establish their admissibility through foundation testimony." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.13[1] (Joseph M. McLaughlin ed., Matthew Bender 2d ed.1997); see also Yacht Club v. Utah Liquor Control Comm'n, 681 P.2d 1224, 1225-27 (Utah 1984) (holding toxicology report prepared by state chemist properly admitted pursuant to predecessor of Rule 803(8) through testimony of liquor law enforcement agent).
[4] For example, the caseworker testified that she learned of appellant's efforts to seek welfare through conversations with an Office of Family Services worker who possessed welfare applications completed by appellant and who had spoken to appellant regarding welfare.
[5] The decision in Walen was later vacated because the child had been returned to the mother before the decision issued. See State ex rel. Juvenile Department v. Walen, 785 P.2d 360, 360 (Or.Ct.App.1989).