2000 Utah Ct. App. 230

**STATE of Utah, Plaintiff and Appellee,**

v.

**Chris Alan TRYBA, Defendant and Appellant.**

**No. 981869–CA.**

Court of Appeals of Utah.

July 28, 2000.

---

Catherine E. Lilly, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Jan Graham, Attorney General, and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., BILLINGS, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Christopher Alan Tryba, as part of a plea bargain, entered a guilty plea for Rape of a Child, a first degree felony, in violation of Utah Code Ann. § 76–5–402.1 (1999); Sodomy Upon a Child, a first degree felony, in violation of Utah Code Ann. § 76–5–403.1 (1999); and Sexual Abuse of a Child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1(1) (1999). Tryba appeals the trial court's conclusion that he was ineligible for probation under Utah Code Ann. § 76–5–406.5 (1999). We affirm.

## BACKGROUND

¶ 2 Tryba was charged by information with one count of rape of a child, two counts of sodomy upon a child, and two counts of aggravated sexual abuse of a child. These five charges arose out of allegations made by Tryba's eight-year-old daughter, M.T., and her young friend. Pursuant to a plea bargain, Tryba admitted guilt only to the three crimes involving his daughter, while all charges involving her friend were dropped.

¶ 3 After Tryba's guilty plea, the trial court held an evidentiary hearing to determine Tryba's eligibility for probation under Utah Code Ann. § 76–5–406.5 (1999). The trial court concluded Tryba was ineligible for probation because, among other things, he failed to meet the requirements of section 76–5–406.5(1)(k). The section provides, in relevant part, as follows:

> In a case involving conviction, for ... rape of a child; ... sodomy on a child; ... [or] aggravated sexual abuse of a child, the court may suspend execution of sentence and consider probation to a residential sexual abuse treatment center only if *all* of the following circumstances are found by the court to be present and the court in its discretion, considering the circumstances of the offense, including the nature, frequency, and duration of the conduct, and considering the best interest of the public and the child victim, finds probation to a residential sexual abuse treatment center to be proper:
>
> . . .
>
> (k) if the offense is committed by a parent, stepparent, adoptive parent, or legal guardian of the child victim, the defendant shall, in addition to establishing all other conditions of this section, establish it is in the child victim's best interest that the defendant not be imprisoned by presenting evidence provided by a treatment professional who:
>
> (i) is treating the child victim and understands he will be treating the family as a whole; or
>
> (ii) has assessed the child victim for purposes of treatment as ordered by the court based on a showing of good cause[.]

Utah Code Ann. § 76–5–406.5(1) (1999) (emphasis added).

¶ 4 Because the trial court concluded that the evidence presented at the evidentiary hearing did not prove the necessary elements by a preponderance of the evidence, we now set out the evidence presented that is relevant to our review. Tryba was M.T.'s primary care giver following his divorce from M.T.'s mother. On January 28, 1998, Tryba was charged with the crimes, and M.T. went to live with her mother in New York. Neither M.T., her mother, or M.T.'s therapist were present or testified at the hearing. At the mother's request, M.T.'s New York therapist refused to forward any reports regarding M.T.'s treatment to Tryba. Consequently, Tryba's witnesses consisted of his brother, friends, and mental health professionals familiar with Tryba but not with M.T. None of the testifying professionals had any actual treatment arrangements with M.T. or had personally spoken with her. Moreover, none of the professionals had assessed M.T. pursuant to court order.

¶ 5 During the hearing, Dr. Robert Card, who had developed Tryba's treatment program, was asked whether he might treat both M.T. and Tryba in the future. He indicated that at a future date the family structure might be revised, and that, while speculative at best, it was possible he might eventually treat the entire family. He was also asked his opinion regarding M.T.'s best interest. He admitted his only exposure to M.T. was watching a videotaped interview of her, conducted by a police detective, where, in his opinion, she acted as would any normal child her age. However, he had never spoken with M.T.; had not been sent any paperwork by her therapist; did not know how her therapy was progressing; and, from watching the video, could only conclude, in general terms, that M.T. needed treatment. Despite his limited knowledge, he stated, "I would say that [it is in M.T.'s] best interest [that Defendant not be in prison]," but he readily acknowledged "that's speculative." Dr. Card thought sending Tryba to prison might interfere with the identity needs of M.T. as she matures to adulthood.

¶ 6 Jerome Miller, an expert in treating sex offenders and their victims, testified that he had talked with M.T.'s mother on the phone and felt she and M.T. needed treatment. He admitted, however, that he was not their therapist and that no arrangements had been made for him to begin any therapist/patient relationship with them. Based on his interview with M.T.'s mother, his interviews with Tryba, the financial circumstances of M.T. and her mother, and—like the other witnesses—watching the taped interview, Dr. Miller concluded sending Tryba to prison would not be in M.T.'s best interest. Dr. Miller acknowledged his conversation with M.T.'s mother was limited to general questions by which he found out M.T. was in therapy and doing "all right," but little else.

¶ 7 Layne Mecham, a licensed clinical psychotherapist whose only exposure to M.T. was viewing the video, opined that M.T. did not show any signs of psychological harm. On cross-examination he admitted it is questionable whether one can determine psychological injury from merely watching a videotaped interview.

¶ 8 Dan Green, Tryba's "proctor" under his proposed treatment program, was also asked if he had an opinion, developed from the "course of your conversations with Mr. Tryba over the last two-and-a-half months," regarding what would be in M.T.'s best interest. He responded that he did not know, but said he thought Tryba's possibility of recidivism was very low. Tryba's brother also testified that Tryba could provide financial support to M.T. and her mother if not imprisoned, and he felt that would be in everyone's best interest.

¶ 9 After the hearing, the trial court refused to grant Tryba probation, concluding Tryba had failed to prove by "a preponderance of the evidence" that he was eligible for probation under the statute. The trial court sentenced Tryba to two minimum mandatory terms of six-years-to-life for the sodomy and rape, and one-to-fifteen years for the sexual abuse of a child, all sentences to run concurrently. Tryba appeals the trial court's conclusion that he was ineligible for probation.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Tryba alleges the trial court misconstrued section 76–5–406.5(1) in con-

cluding he was ineligible for probation. A trial court's interpretation of a statute is reviewed for correctness. *See C.T. v. Johnson*, 1999 UT 35, ¶ 6, 977 P.2d 479. Tryba also requests that we set aside the sentence imposed by the trial court. We will set aside a sentence only if "the sentence represents an abuse of discretion, if the trial judge fails to consider all legally relevant factors, or if the sentence imposed exceeds the limits prescribed by law." *State v. Gibbons*, 779 P.2d 1133, 1135 (Utah 1989) (citations omitted).

## ANALYSIS

█ ¶ 11 The statute at issue in this appeal offers a limited exception to the usually applicable mandatory sentence regime governing the most serious child sex abuse offenses. *See* Utah Code Ann. § 76–3–406 (1999); *State v. Johnson*, 856 P.2d 1064, 1067 (Utah 1993). This exception was historically referred to as the "incest exception," [1] *State v. Gentlewind*, 844 P.2d 372, 376 (Utah Ct. App.1992), though not technically limited to incest, and more recently referred to by our Supreme Court as simply "the probation statute." *Johnson*, 856 P.2d at 1068. This limited exception applies only to situations when greater harm would be done to the victim and other innocent family members by sending the offender to prison than by finding some alternative. *See id.* at 1068, 1073. Consequently, the exception seeks other strict and regimental means of retribution and treatment for the offender. *See* Utah Code Ann. § 76–5–406.5 (1999). However, eligibility even for consideration under this exception is difficult to attain.

█ ¶ 12 The statute states that "the court may suspend execution of sentence and consider probation to a residential sexual abuse treatment center only if *all* of the following circumstances are found." *Id.* § 76–5–406.5(1) (emphasis added). The statute then lists à dozen requirements, *see id.* § 76–5–406.5(1)(a)–(*l*), each of which the "defendant

has the burden to establish by a preponderance of evidence." *Id.* § 76–5–406.5(5). These twelve requirements are in the conjunctive, meaning if any one of the requirements is not established by a preponderance of evidence, probation is not an option. Of course,

> even the establishment of all the section 76–5–406.5(1) criteria by a preponderance of the evidence does not compel a trial court to grant probation. Section 76–5–406.5[ (4) ] gives the court "discretion to deny the request based on its consideration of the circumstances of the offense" and impose the minimum mandatory sentence.

*Gentlewind*, 844 P.2d at 376 (citation omitted).

█ ¶ 13 Because a defendant has the burden of meeting all twelve requirements of section 76–5–406.5(1), we need not review all the criteria for eligibility if our inquiry reveals that any single requirement is not satisfied. *Cf. State v. Marvin*, 964 P.2d 313, 315 (Utah 1998) (when defendant has burden of satisfying two-part test, "it is unnecessary for this court to apply both parts where our inquiry reveals that one of its parts is not satisfied"). In reviewing the trial court's application of section 76–5–406.5, we apply long-standing rules of statutory construction. "This court's primary objective in construing enactments is to give effect to the legislature's intent." *Gohler v. Wood*, 919 P.2d 561, 562 (Utah 1996). " 'When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute.' " *Holmes v. American States Ins. Co.*, 2000 UT App 85, ¶ 10, 391 Utah Adv. Rep. 16, 1 P.3d 552 (quoting *Wilson v. Valley Mental Health*, 969 P.2d 416, 418 (Utah 1998)). · Therefore, "where the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1168 (Utah 1991).

---

1. On the surface, a policy that affords greater leniency for sex crimes "within the family" seems irrational. A defendant who sexually victimizes a child violates an important societal taboo: Adults shall not have sex with children. A defendant who sexually victimizes a child family member violates not one, but *two* important societal taboos: Adults shall not have sex with children; unless they are married to each other, family members shall not have sex with each other.

¶ 14 Section 76–5–406.5(1)(k), set forth above, applies, as here, only "if the offense is committed by a parent, stepparent, adoptive parent, or legal guardian of the child victim." In that event, the defendant must "establish it is in the child victim's best interest that the defendant not be imprisoned." Utah Code Ann. § 76–5–406.5(1)(k) (1999). However, the defendant is not free to make that showing in any way imaginable, but only "by presenting evidence provided by a treatment professional who" is either "treating the child victim and understands he will be treating the family as a whole," or is "assess[ing] the child victim for purposes of treatment as ordered by the court based on a showing of good cause[.]" *Id.*

¶ 15 In his closing statement during the evidentiary hearing, Tryba's counsel argued Tryba had met this requirement by a preponderance of the evidence. Specifically, he claimed that all of Tryba's witnesses and professionals assessed, as best they could, M.T.'s best interest by watching the video of the interview with M.T. and interacting with Tryba. They all opined, with appropriate qualification, that it would be in M.T.'s best interest to grant Tryba probation. Defense counsel summed up: "[O]ther than the restrictions we had because of the noncooperation of the victim and her mother and the therapist in New York, I think that's as good a job as we could do in terms of coming up with an assessment of the child victim['s best interest]." Counsel also stated, "hopefully there will be correspondence coming back from that [New York] therapist to Dr. Card's office and eventually, in the best interest of [M.T.] ... [t]he family will be treated as a whole by either Dr. Card in conjunction with the psychologist in New York or some other way."

¶ 16 In opposition, counsel for the State argued:

[W]hat the best interests of this child are I think are items that are incapable of being ascertained by the people we've heard from today.... [T]he statements about [M.T.'s] mother ... have nothing to do with [M.T.] and her best interests. Maybe the only person who could tell us about this is someone who has seen her on a regular basis and who has the expertise to ascertain what her psychological needs are and will be in the future. That person has not come forward.

The State's position is essentially correct. The statute's plain language requires very particularized testimony offered by one of two categories of specifically defined "treatment professional[s]."

¶ 17 In enacting section 76–5–406.5, the Utah Legislature envisioned a very narrow set of circumstances that would permit one who sexually abused a child to avoid a mandatory prison sentence. This statute applies in comparatively rare situations, when a defendant corresponds perfectly to an intentionally large number of tightly fitted hoops—all designed to "avoid compounding the harm already suffered while protecting the victim from further abuse." *Johnson,* 856 P.2d at 1073. In particular, the Legislature put stringent requirements on what evidence must be presented before a trial court can conclude it is in the child's best interest to even consider probation, and it is not enough to base this conclusion on the opinion of family, friends, or even the defendant's therapists or hired experts.

¶ 18 Tryba's evidence may arguably have complied with the statute in an earlier form, when all the defendant needed to prove by a preponderance of evidence was that "it is in the victim's best interests that the defendant not be imprisoned," without restricting how that evidence could be presented. Utah Code Ann. § 76–5–406.5(1)(g) (1990). The Utah Supreme Court, interpreting this prior version of the statute, stated:

Although expert testimony might well be relevant, nothing in subsection (1)(g) or in the remainder of the statute indicates that expert evidence is necessary. Evidence from a parent, the victim, and those close to the victim, as well as evidence concerning the circumstances of the victim and his or her family, may prove what a victim's best interests are without the aid of expert testimony.

*State v. Johnson,* 856 P.2d 1064, 1073 (Utah 1993).

¶ 19 The Legislature obviously had second thoughts about this rather loose approach to ascertaining the victim's best interest and set about to change it. The plain language of the statute currently in effect significantly tightens this element of the probation exception and renders the above judicial pronouncement obsolete. To meet the preponderance standard, the statute now requires that an expert testify as to the child's best interest. Moreover, the expert cannot be just any expert, but must be either a "treatment professional" who is "treating the child victim and understands he will be treating the family as a whole" or who "assess[es] the child victim for purposes of treatment as ordered by the court based on a showing of good cause." Utah Code Ann. § 76–5–406.5(1)(k) (1999). No other kind of expert will suffice. There is no alternative by which the best interest of the victim can be shown for defendants unable to marshal the prescribed kind of testimony from the specified kinds of professional.

¶ 20 The logic behind the statute is obvious: The requirement ensures testimony is presented by a treating or court-ordered professional with first-hand knowledge of the child's needs, who is unbiased, and, above all, is concerned with what would be best for the child. In this case, each treatment professional who testified was in court to speak first and foremost on Tryba's treatment potential, progress, and character. This evidentiary showing by the professionals treating Tryba, while helping meet other requirements of 76–5–406.5(1),[2] is almost the opposite of what subsection (1)(k) requires. A treatment professional qualified under subsection (1)(k) must be focused on treating M.T., while understanding he will be treating Tryba at some point as well, or must have been assessing M.T. pursuant to court order. In the present case, M.T.'s best interest was addressed by professionals concerned primarily with Tryba, not with M.T., who were speaking, at best, as distant observers of M.T. with very limited knowledge of her, essentially none of which was firsthand.

¶ 21 Regardless of the reason for Tryba's failure to meet the requirements of section 406.5(1)(k)—and there is no question M.T.'s relocation to New York and the attitude of her mother made Tryba's task a difficult one—we must adhere to the plain language of the statute, which allows for showing the victim's best interest only through testimony offered by specifically described professionals who have firsthand knowledge of the victim gained from treating or assessing her. Bluntly put, incarceration for child sex abusers is the expectation, and failure to meet all the requirements of the narrow probation exception, regardless of the reason for the failure, means probation cannot even be considered by the trial court.

¶ 22 Tryba met most of the requirements of the statute, but he did not meet them all.[3] Thus, the trial court was correct in concluding Tryba did not prove by a preponderance of the evidence that he was eligible for probation consideration.

## CONCLUSION

¶ 23 Tryba failed to prove, in the precise manner required by statute, that granting

---

**2.** Under subsection (1)(i), Tryba was required to show:

> [R]ehabilitation of the defendant through treatment is probable, based upon evidence provided by a treatment professional who has been approved by the Department of Corrections and the Department of Human Services under Subsection (3) and who has accepted the defendant for treatment[.]

Utah Code Ann. § 76–5–406.5(1)(i) (1999). And under subsection (1)(j), he was required to show:

> [T]he defendant has undergone a complete psychological evaluation conducted by a professional approved by the Department of Corrections and the Department of Human Services and:

> (i) the professional's opinion is that the defendant is not an exclusive pedophile and does not present an immediate and present danger to the community if released on probation and placed in a residential sexual abuse treatment center; and
> (ii) the court accepts the opinion of the professional[.]

*Id.* § 76–5–406.5(1)(j). The testimony of Tryba's professional witnesses was surely relevant to these prongs of the probation exception.

**3.** Because we resolve this case under subsection (1)(k), we need not address Tryba's arguments regarding the other two requirements which the trial court also held Tryba failed to meet.

him probation would be in the best interest of his daughter, M.T. He failed to meet the statutory requirement that he present evidence from a treatment professional who is treating M.T. or, in the alternative, is assessing M.T. as ordered by the court. Ad hoc substitutes are legally insufficient under the statute. Therefore, the trial court correctly concluded Tryba was ineligible for probation under Utah Code Ann. § 76-5-406.5 (1999). The sentence imposed by the court was entirely proper.

¶ 24 Affirmed.

¶ 25 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and JUDITH M. BILLINGS, Judge.