2004 UT App 206

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel J. MARONEY, Defendant and Appellant.**

**No. 20030519–CA.**

Court of Appeals of Utah.

June 17, 2004.

---

Joan C. Watt, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS and GREENWOOD, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 Defendant Daniel Maroney appeals his sentences for sexual abuse of a minor, a second degree felony, in violation of Utah Code Annotated section 76–5–404(1) (1999), and lewdness involving a child, a class A misdemeanor, in violation of Utah Code Annotated section 76–9–702(5) (1999). We remand for findings.

## BACKGROUND

### Preliminary Proceedings

¶ 2 Maroney met R.B., a twelve-year-old boy, at the Steiner Aquatic Center where Maroney was a swimming instructor. Thereafter, in the summer of 2000, Maroney met R.B.'s mother, Bernadette, and dated her until approximately February 2002. During that period, R.B. spent the night at Maroney's one bedroom apartment fourteen or fifteen times without Bernadette being present. Maroney and R.B. would share a bed and sleep in their underwear. Maroney would also regularly kiss R.B. on the mouth, and even try to French-kiss him. On one occasion, when they were alone, Maroney instructed R.B. on how to masturbate. On another occasion, while R.B. was sleeping at Moroney's apartment, Maroney pulled down R.B.'s underwear, rubbed around R.B.'s genitals and then rubbed R.B.'s penis. Maroney told R.B. not to tell anyone.

¶ 3 In July 2002, Bernadette contacted police to report that R.B. had disclosed to her that he had been touched inappropriately by Maroney. In August 2002, Maroney was charged with aggravated sexual abuse of a child and lewdness involving a child. After waiving a preliminary hearing, Maroney was bound over and pleaded guilty to one count of sexual abuse of a child, and one count of lewdness involving a child. Maroney admitted that he had touched R.B.'s genitals for his own sexual gratification and had verbally instructed R.B. on how to masturbate. The trial court accepted Maroney's guilty pleas and ordered a presentence investigation report from Adult Probation & Parole (APP) in preparation of sentencing.

### Presentence Investigation Report (PSI)

¶ 4 Maroney acknowledged his crimes to the PSI investigator (the investigator). He acknowledged that he and R.B. would greet each other with a hug and kiss. Maroney also admitted that he should not have instructed R.B. on how to masturbate. Maroney further acknowledged that he had previously abused his then nine-year-old stepson through fondling, masturbation, sodomy, and mutual oral sex. As part of a plea in abeyance in that case, Maroney received counseling through Davis County Mental Health.

¶ 5 Maroney informed the investigator that he first became aware of his attraction to young boys when he was in his twenties, but had been able to control himself through prayer. Maroney also acknowledged that a nephew once alleged that Maroney had abused him, but the charges were dropped after the boy recanted his statement. Further, Maroney admitted that he had abused other family members. However, when pressed about the identity of these "other family members," Maroney stated that "there aren't any children out there. It was a long time ago."

¶ 6 Maroney acknowledged that he had abused alcohol and marijuana in the past. The investigator recognized that it did not appear that alcohol was a factor in the present offenses. Nevertheless, the investigator opined that Maroney may have had a more severe alcohol problem than he had acknowledged.

¶ 7 Reflecting on his mental health, Maroney admitted that he had contemplated suicide for many years, but never seriously. Maroney also felt that he had overcome the emotional distress in connection to the present offenses and was ready to "deal with it." Maroney stated that his only referral to mental health professionals was immediately following his sentencing for sexually abusing his nine-year-old stepson. However, the investigator found police reports reflecting statements by Maroney's ex-wife that Maroney had serious mental health issues such as split personality, had often threatened bodily harm to himself and his family, and had once threatened to burn down their house with her and the children inside.

¶ 8 The investigator noted that Maroney was cooperative and forthcoming in providing background information, and accepted responsibility for the present offenses. The investigator also noted that Maroney acknowledged his need and desire to receive specialized sex offender treatment. Furthermore, the investigator opined that Maroney "may have other mental health issues, in addition to his sexual attraction to young boys."

¶ 9 The investigator spoke with several people familiar with Maroney, including Bernadette. Bernadette stated that she was concerned about Maroney and feared that Maroney would bother her and R.B. if he got out of jail. She also expressed that she would have a hard time facing Maroney again. The investigator also spoke with Maroney's daughter, Christina. While very supportive of her father, Christina acknowledged that she had been shielded from the type of abuse Maroney inflicted on his stepsons. She also reported that Maroney had told her that although he had not abused the victim in the present case, he decided to plead guilty to protect his family from the trauma of a trial. In her letter to the court, Christina restated that her father was not a violent man. The investigator also spoke with Maroney's ex-wife, Pat, who stated that Maroney had abused her three sons, and expressed concerns that Bernadette might be

in danger. In her letter to the court, Pat labeled Maroney as violent, devious, and a predator who preyed on young children from positions of trust. Pat urged the court to impose the maximum sentence available.

¶ 10 The investigator received letters from Brian and Richard, two of Pat's sexually abused sons. Brian wrote that Maroney had abused him for about eight years and detailed how the abuse had taken place. Brian then described the pain and shame he had felt as a result of the abuse. Richard wrote of the enforcement system's failure to help him, and of his willingness to testify at Maroney's sentencing. Richard reported that Maroney had regularly abused him sexually for about nine years. Richard also wrote that Maroney had physically abused him several times by beating him with a plastic baseball bat, punching him in the stomach, or throwing him against a car. Richard claimed that Maroney was "a master of psychological manipulation."

¶ 11 The investigator also received a number of letters from parents of Maroney's swimming students. They collectively supported Maroney and described him as an exemplary swimming instructor who never behaved inappropriately with their children and could not be a child molester.

¶ 12 Considering all the information obtained, the investigator concluded that Maroney "presents an unacceptable risk to young boys in the community, and incarceration is the only appropriate sentencing alternative in this case." The investigator noted that Maroney appeared amenable for specialized sex offender treatment, but such treatment should be provided only in a secure setting. In accord with its investigator's evaluation, APP recommended that Maroney be incarcerated for the statutory term of one-to-fifteen years for sexual abuse of a child, and the maximum statutory term of twelve months for lewdness involving a child.

*Initial Sentencing Hearing*

¶ 13 At the initial sentencing hearing, all parties noted receipt of the PSI. Defense counsel indicated that he and Maroney had reviewed the PSI, along with the letters of support. The trial court then stated that it had read all of the letters, but was concerned that Maroney had committed offenses similar to the ones committed years earlier. Defense counsel argued that Maroney should not be held responsible for acts allegedly committed many years ago, and emphasized Maroney's favorable qualities. Nevertheless, the trial court reiterated its concerns about the pattern of abuse demonstrated by Maroney and ordered that Maroney undergo a diagnostic evaluation.

*Diagnostic Evaluation*

¶ 14 In addition to the police reports alluded to by the PSI investigator, the diagnostic evaluator (the evaluator) also identified additional police reports, including a 1984 report alleging that Maroney had made death threats against his ex-wife. One report described an encounter with police while Maroney was naked and intoxicated. In another report, Maroney was found in an incoherent state with numerous medications nearby. Other incidents involved Maroney "continually calling, harassing, and stalking" Bernadette, which ultimately resulted in a cease-and-desist order.

¶ 15 The evaluator inquired about the nature of Maroney's treatment at Davis County Mental Health. Maroney responded that his therapy was primarily focused on marital issues, rather than on sex offender issues. Yet when asked about the nature of his marital conflicts, Maroney admitted that his marital conflicts were primarily about his sexual abuse of his stepsons. Noting the contradictions in Maroney's statements, the evaluator expressed doubts about the true nature of Maroney's treatment.

¶ 16 The evaluator further noted that while Maroney was relatively honest about his sexual assaults on children, he continued to minimize the level of domestic violence he had committed against his ex-wife and stepsons. The evaluator considered Maroney a potential danger to the community and recommended that he be committed to prison.

*Psychological Evaluation*

¶ 17 Maroney later underwent a psychological evaluation with Dr. Anderson. Dr.

Anderson reported that Maroney first had sexual contact with boys at the age of twelve and Maroney was himself regularly molested. Further, Dr. Anderson reported that Maroney absolutely denied using violence on any of his victims or making threats to his ex-wife. Still, Maroney admitted that he had hit his stepsons a few times.

¶ 18 For the first time, Maroney described himself as an alcoholic and reported smoking marijuana regularly over the past five years. Maroney also claimed to have suffered from depression, which he attempted to relieve through alcohol. Maroney further acknowledged having had thoughts about suicide.

¶ 19 Dr. Anderson conducted several psychological tests on Maroney. On one test, Maroney scored similarly to other individuals who are described as rebellious, immature, self-centered, extroverted, and impulsive. On another, Maroney attempted to portray himself in an unrealistically favorable manner. On another test, Maroney wrote "I am a super dad," although he admitted regret for hurting his victims. On yet another test, Maroney admitted his sexual deviance and confirmed that he had sexually assaulted young boys. Dr. Anderson reported that Maroney "demonstrates a pattern of disregard for, and violation of the rights of others." Dr. Anderson also reported that Maroney demonstrated virtually "no remorse for his victims, and appeared completely preoccupied with his own well-being." Dr. Anderson further opined that there was reason to believe that there were additional undisclosed victims. Dr. Anderson finally concluded that Maroney's "antisocial traits, when combined with pedophilia, place him at a high risk to re-offend sexually."

### Sentencing Hearing

¶ 20 At the sentencing hearing, the court indicated that it had reviewed the PSI and the diagnostic and psychological evaluations. Defense counsel acknowledged that he too had reviewed those documents with Maroney.

¶ 21 Defense counsel acknowledged that Maroney had committed criminal offenses twenty years ago and in the instant case. However, counsel pointed out discrepancies in the sentencing reports regarding the nature of Maroney's treatment at Davis County Mental Health. Counsel then invited the trial court to apply its fact-finding function to evaluate the nature of Maroney's treatment, which counsel recognized offered "rehabilitative services in the area of sex abuse," while Maroney maintained the treatment was primarily "focused on marital issues." Counsel attempted to minimize the significance of Maroney's actions, arguing that Maroney's conduct fell at the lower end of the sexual abuse spectrum. Counsel also argued that the concerns of the authors of the presentence reports—the investigator, the evaluator, and Dr. Anderson—were "not well-founded" as to Maroney's violent nature.

¶ 22 The court acknowledged that Maroney had taken responsibility for his conduct and suggested that Maroney was amenable to treatment. However, the court stated that it was "exceptionally concerned" that, although Maroney had been aware of his attraction toward young boys for many years, he had failed to seek appropriate treatment and had placed himself in situations where he could easily find new victims. Noting that it was less concerned with the punitive aspect of sentencing than with public safety, the court finally sentenced defendant to prison. Maroney now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 23 On appeal, Maroney argues that the trial court erred by failing to determine on the record the accuracy of contested information contained in the sentencing reports. "Whether the trial court properly complied with a legal duty to resolve on the record the accuracy of contested information in sentencing reports is a question of law that we review for correctness." *State v. Veteto*, 2000 UT 62, ¶ 13, 6 P.3d 1133.

¶ 24 Maroney also contends that trial court committed plain error in relying on sentencing reports that contain unreliable information. This issue also presents a question of law that is reviewed for correctness. *See State v. Johnson*, 856 P.2d 1064, 1073 (Utah 1993) (applying a correctness standard in reviewing the issue of whether reports con-

sidered at sentencing were unreliable and violated due process).

## ANALYSIS

### I.

¶ 25 Maroney first argues that the trial court failed to determine on the record the accuracy of some information contained in the sentencing reports. Specifically, Maroney contends that the trial court failed to determine the extent of (1) his prior treatment at Davis County Mental Health, and (2) his violent nature.

¶ 26 It is well established that "any alleged inaccuracies in the presentence investigation report, which have not been resolved by the parties and the department prior to sentencing, shall be brought to the attention of the sentencing judge." Utah Code Ann. § 77–18–1(6)(a) (2003). Compliance with section 77–18–1(6)(a) further "requires the sentencing judge to consider the party's objections to the report, make findings on the record as to whether the information objected to is accurate, and determine on the record whether that information is relevant to the issue of sentencing." *State v. Jaeger,* 1999 UT 1, ¶ 44, 973 P.2d 404. However, "if a party fails to challenge the accuracy of the presentence investigation report at the time of sentencing, that matter shall be considered to be waived." Utah Code Ann. § 77–18–1(6)(b).

¶ 27 The State concedes that Maroney sufficiently "challenged the accuracy" of the extent of Maroney's prior treatment. *Id.* We agree. After pointing out the contested nature of Maroney's treatment, counsel told the court, "you'll have to use your fact-finding function" to resolve it. However, the court failed to make the requested findings. Thus, although the issue of the extent of Maroney's treatment was properly brought to the court's attention, the court clearly failed to "make findings on the record." *Jaeger,* 1999 UT 1 at ¶ 44, 973 P.2d 404.

¶ 28 Likewise, defense counsel arguably challenged the accuracy of the extent of Maroney's violent nature. Counsel observed that the authors of the sentencing reports were very concerned about domestic violence reports from Maroney's ex-wife and his stepsons. Counsel complained that neither the evaluator nor Dr. Anderson had interviewed Maroney's daughter, who claimed to never have witnessed violence in the home. Asserting that the authors' views were not "well-founded," counsel told the court, "I would ask you to bear that in mind as it relates to the idea of Maroney being amenable to treatment." Notwithstanding counsel's remarks, the court did not determine on the record the extent of Maroney's violent nature.

¶ 29 We therefore remand the case so the trial court can resolve the objections to the alleged inaccuracies in the sentencing reports.

### II.

¶ 30 Maroney also argues that the trial court committed plain error[1] under *State v. Johnson,* 856 P.2d 1064 (Utah 1993), when the court reviewed unreliable presentence reports containing multiple hearsay. However, Maroney's reliance on *Johnson* is misplaced. In *Johnson,* the defendant argued that his sentences for sexual abuse should be reversed because "the trial court erred in admitting unproven allegations that there was another victim and in placing on him the burden of refuting allegations based on double and triple hearsay." *Id.* at 1070. The allegations regarding another victim were made in an Intermountain Special Abuse Treatment Center (ISAT) report and various other letters from relatives containing multiple hearsay. However, none of these allegations were reported in the PSI. In ruling in favor of Johnson, the Utah Supreme Court held that "not only did the ISAT report consist almost entirely of double and triple hearsay, but also the hearsay statements contained numerous internal in-

---

1. "In general, to establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993) (citations omitted).

consistencies and speculative conclusions based on incomplete information and questionable factual assumptions." *Id.* at 1072. Unlike in *Johnson,* where the court had no evidence to corroborate the ISAT report and the letters from relatives alleging the existence of a second victim, the court in this case received abundant corroborating evidence. Thus, Maroney's plain error argument is without merit.

## CONCLUSION

¶ 31 We hold that the trial court erred in failing to resolve Maroney's objections regarding the scope of his prior treatment and the extent of his violent nature, and therefore remand so the court can resolve the objections on the record. If resolution of the objections affects the trial court's view of the appropriate sentence, the trial court may then revise the sentence accordingly. *See State v. Finlayson,* 2004 UT 10, ¶ 13, 84 P.3d 1193.

¶ 32 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.