2014 UT App 67

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Bryan WATERFIELD, Defendant and Appellant.**

No. 20120333–CA.

Court of Appeals of Utah.

March 20, 2014.

Scott L. Wiggins, Salt Lake City, Attorney for Appellant.

Sean D. Reyes and Michelle I. Young, Salt Lake City, Attorneys for Appellee.

Judge JOHN A. PEARCE authored this Memorandum Decision, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

## Memorandum Decision

PEARCE, Judge:

¶ 1 Bryan Waterfield previously appealed to this court in *State v. Waterfield* (*Waterfield I*), 2011 UT App 27, 248 P.3d 57. There, we affirmed the sentence entered by the district court but remanded for the limited purpose of definitively resolving objections Waterfield had raised regarding his presentence investigation report (the PSI Report). *Id.* ¶¶ 4, 7, 11. Waterfield now appeals the district court's resolution of that issue, claiming that on remand the district court erred in (1) failing to inquire about his expressed dissatisfaction with counsel; (2) finding he knowingly, intelligently, and voluntarily waived his right to counsel; (3) failing to address his objections to the PSI Report; and (4) not revisiting his sentence, which he claims was pronounced in reliance on the incomplete PSI Report.[1] We affirm.

¶ 2 In his prior appeal, Waterfield complained "that the district court failed to address adequately the 'numerous objections' he made" to the PSI Report. *Id.* ¶ 8. We

agreed that the district court had not satisfied "its duty to resolve objections to the PSI [Report] on the record." *Id.* ¶ 9; *see also* Utah Code Ann. § 77–18–1(6)(a) (LexisNexis Supp.2010); *State v. Jaeger*, 1999 UT 1, ¶ 44, 973 P.2d 404 (requiring a sentencing judge "to consider the party's objections to the report [and] make findings on the record as to whether the information objected to is accurate"). Accordingly, we remanded to the district court "for the limited purpose of resolving [Waterfield's] objections to the PSI [Report] that were not adequately addressed on the record by the district court." *Waterfield I*, 2011 UT App 27, ¶ 11, 248 P.3d 57.[2]

¶ 3 On remand, Waterfield was initially represented by appointed counsel. The State stipulated to amendments in the PSI Report in response to objections raised by Waterfield's counsel. Nevertheless, Waterfield complained about his attorney to the court in three pro se motions. In Waterfield's first motion, he alleged that his counsel had "zero communication" with him and Waterfield requested that he be allowed to proceed pro se. In his second motion, Waterfield complained that a letter his counsel had sent him created a conflict of interest.[3] Waterfield stated that he was "prepared to continue pro-se" but also requested "new defense counsel appointed from outside of the entire Second District due to an existing conflict of interest with every legal defender within the Second District."[4] Waterfield's third motion raised "the issue of a new conflict of interest with [the same] appointed defense counsel"; specifically, that counsel's correspondence with Waterfield contained "many demoralizing meritless remarks ... that reflect his inability to fairly work the issues on objection." The third motion also stated, "Though the Defendant has a right to counsel, if no counsel is appointed from out-

---

1. Waterfield is represented by new counsel on appeal.

2. The judge who presided over Waterfield's trial and sentencing retired in 2010; on remand, Waterfield's case was assigned to a different judge.

3. Waterfield attached the letter to the motion. In the letter, Waterfield's counsel discussed two in-person meetings with Waterfield, the tension

between Waterfield's desire for speedy resolution and his counsel's need for preparation time, and strategy for the upcoming hearing. The letter also expressed, in blunt terms, counsel's exasperation with Waterfield.

4. It appears that during the course of these proceedings, Waterfield has been represented by at least six different attorneys and has raised complaints about many of them.

side of the ... Second District, the Defendant then wishes to proceed pro-se."

¶ 4 At a hearing on the motions, the district court stated, "Mr. Waterfield has in fact filed a motion to essentially have someone else appointed [to represent him] which ... I'm not going to do in this matter." The court then stated that if Waterfield wished to proceed pro se, it would first have to ask Waterfield "a number of questions." After Waterfield answered those questions, the district court granted his motion to proceed pro se, informed him that he could file additional objections to the PSI Report,[5] and scheduled an evidentiary hearing to address his objections. At the evidentiary hearing, the district court ordered several changes to the PSI Report on the basis of Waterfield's objections but also rejected a number of Waterfield's proposed modifications. Waterfield appeals from several of the district court's decisions.

## I. Right to Counsel

¶ 5 The State asserts that we need not reach the merits of Waterfield's first two contentions—concerning the waiver of his right to counsel and the district court's failure to inquire into his dissatisfaction with appointed counsel—because Waterfield had no Sixth Amendment right to counsel during the evidentiary hearing regarding the PSI Report.

¶ 6 The State notes that a defendant has a constitutional right to counsel only at critical stages of criminal proceedings where incarceration is a possibility. *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Orem City v. Bergstrom*, 1999 UT App 350, ¶ 8, 992 P.2d 991. The State argues that although "[s]entencing is a critical stage of a criminal proceeding at which a defendant is entitled to the effective assistance of counsel," *State v. Casarez*, 656 P.2d 1005, 1007 (Utah 1982), Waterfield's PSI Report hearing was not such a critical stage. The State appears to contend that a defendant has no constitutional right to counsel where, as here, the sentence has been pro-

nounced and upheld on appeal and the effects of correcting a presentence investigation report are limited to its possible bearing on future parole and probation decisions.

¶ 7 The State draws an analogy between the PSI Report hearing and probation revocation hearings. The State argues that "even though there might be some risk of confinement" at a probation revocation hearing, "defendants do not have a Sixth Amendment right to counsel" at such proceedings. The State relies on two cases for this proposition: *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *State v. Byington*, 936 P.2d 1112 (Utah Ct.App. 1997). Although these cases suggest that the Sixth Amendment may not require counsel at all probation revocation hearings, *Scarpelli* and *Byington* are less definitive than the State represents because due process principles may require counsel in some circumstances. In *Scarpelli*, the Supreme Court held that "[a]lthough the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees."[6] 411 U.S. at 790, 93 S.Ct. 1756.

¶ 8 In *Byington*, we explained that "[t]he assistance of counsel at a probation revocation hearing is constitutionally guaranteed only in certain circumstances." 936 P.2d at 1115; *see also id.* at 1114–17 (holding that a defendant was not constitutionally entitled to counsel at a probation revocation hearing when he admitted to violating the terms of his probation and refused the district court's offer to appoint counsel). Quoting *Scarpelli*, we noted that counsel should be provided in probation revocation hearings where the probationer makes a "'timely and colorable claim (i) that he has not committed the alleged [probation violation]; or (ii) that, even if the violation is ... uncontested, there are substantial reasons which justified or miti-

---

**5.** Waterfield took advantage of this opportunity.

**6.** The Supreme Court also noted, "In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refus-

al should be stated succinctly in the record." *Gagnon v. Scarpelli*, 411 U.S. 778, 791, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Here, the district court did not state the grounds for refusing Waterfield's request for substitute counsel.

gated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.'" *Id.* at 1115 (quoting *Scarpelli*, 411 U.S. at 790, 93 S.Ct. 1756).

¶ 9 We therefore do not accept the State's premise that a constitutional right to counsel can never exist at a probation revocation hearing.[7] Nor do we accept the State's invitation to hold that there is never a right to counsel at a hearing on a presentence investigation report that occurs after the sentence has been imposed. Instead, we assume without deciding that Waterfield was entitled to counsel at the hearing on the PSI Report.

## II. Failure to Inquire into Dissatisfaction with Counsel

¶ 10 Waterfield contends that he was denied his right to counsel when the district court failed to inquire into his dissatisfaction with appointed counsel. We review "[w]hether a trial court should have inquired further into a defendant's dissatisfaction with counsel ... for an abuse of discretion." *State v. Hall*, 2013 UT App 4, ¶ 8, 294 P.3d 632. But we determine as a matter of law whether a trial court's refusal to appoint substitute counsel violated a defendant's Sixth Amendment right to counsel. *State v. Alvarez–Delvalle*, 2012 UT App 96, ¶ 2, 275 P.3d 279.

¶ 11 This court has previously held that when a defendant expresses dissatisfaction with counsel, the trial court has an affirmative obligation to investigate:

> [W]hen dissatisfaction is expressed, the court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right to counsel would be violated but for substitution.

*State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct.App.1987). Here, the district court summarily dismissed Waterfield's motion for substitute counsel without conducting a *Pursifell* inquiry.

¶ 12 In *State v. Vessey*, we addressed the consequences of a trial court's failure to investigate a defendant's request for new counsel. 967 P.2d 960, 962–64 (Utah Ct.App. 1998). There, we held that such failure was per se error requiring remand for the trial court to "determine if defendant's complaint about his appointed counsel justified the appointment of substitute counsel." *Id.* at 964.

¶ 13 The Utah Supreme Court later analyzed a similar scenario in *State v. Lovell*, 1999 UT 40, 984 P.2d 382. In *Lovell*, the defendant sent a letter to the court before trial, stating that he wanted to proceed pro se and claiming that his appointed counsel had a conflict of interest. *Id.* ¶ 14. The trial court failed to undertake a *Pursifell* inquiry. *Id.* ¶ 27. The supreme court stated that "the trial court should have addressed [the defendant's] letter on the record." *Id.* Nevertheless, the supreme court affirmed the defendant's convictions. *Id.* ¶ 47. The *Lovell* court did not expressly address *Vessey* but concluded that the trial court's failure to conduct a *Pursifell* inquiry did not merit remand, because "the failure to inquire was not harmful to [the defendant] given the circumstances of [that] case." *Id.* ¶ 27.

¶ 14 The *Lovell* court reasoned that insofar as the letter could be interpreted as a request for substitute counsel, the defendant had not shown good cause for substitution of counsel, "such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict," and therefore had no constitutional right to substitute counsel. *Id.* ¶ 31 (citation and internal quotation marks omitted). The court also noted that "the record [did] not show that failure to substitute counsel resulted in an apparently unjust verdict." *Id.* ¶ 33. For these reasons, the

---

7. The State also cites a Tenth Circuit Court of Appeals case for the proposition that routine post-conviction presentence interviews are not critical stages of proceedings. However, that case was withdrawn and reissued without the holding cited by the State. *Compare United States v. Rogers*, 899 F.2d 917, 919 n. 7 (10th Cir.1990), *with United States v. Rogers*, 921 F.2d 975, 978 n. 7 (10th Cir.1990).

supreme court held that "the failure to inquire was harmless error." *Id.* ¶ 35.

¶ 15 Here, as in *Lovell,* there is nothing in the record to suggest an irreconcilable conflict or a complete breakdown of communication between Waterfield and his counsel. The letter attached to the second motion was written by Waterfield's then-counsel and conveys his exasperation with Waterfield's demands, thus demonstrating that the lines of communication were open, albeit strained. The letter recited that counsel had spent three hours meeting with Waterfield in person so that Waterfield could "explain each and every complaint [he] had about the PSI [Report]" and, in a subsequent meeting, had spent another two-and-a-half hours "meeting with [Waterfield] in person so that [he] could explain each and every ongoing concern [he] had about the report notwithstanding the corrections that ... [Adult Probation and Parole] had agreed to make." And while the tone of the letter was at times intemperate, the resulting inference—that counsel was frustrated—does not rise to the level of an irreconcilable conflict.[8]  Indeed, even after he sent the letter, Waterfield's counsel filed extensive objections on his client's behalf and negotiated modifications to the PSI Report with the State. On appeal, Waterfield does not point to any additional information the district court would have learned had it inquired into his dissatisfaction, let alone any information that might have led it to conclude that there existed an irreconcilable conflict or a complete breakdown in communication. Accordingly, Waterfield has not shown that good cause existed to warrant substitution of counsel.

¶ 16 Furthermore, we see no indication, and Waterfield does not argue, that the PSI Report would have been further amended had substitute counsel been appointed. *See*

*id.*  His appointed attorney filed an eleven-page memorandum detailing Waterfield's objections to the PSI Report and noting that "Mr. Waterfield may have additional objections that he may need to articulate to the Court in person." After the district court granted Waterfield's motion to proceed pro se, Waterfield filed further objections to the PSI Report. The court addressed those objections one by one during an evidentiary hearing. At the end of that hearing, Waterfield seemingly agreed with the court that the hearing had "take[n] care of this matter with this Court and the motions that have been filed heretofore." Thus, we conclude that the district court's failure to inquire into Waterfield's expressions of dissatisfaction with counsel was harmless error.

■ ¶ 17 Because Waterfield has not shown that good cause existed to warrant substitution of counsel, and because he has not shown that any harm resulted, we hold that the district court's error in failing to conduct a *Pursifell* inquiry did not violate Waterfield's Sixth Amendment right to counsel.[9]

### III.  Waiver of the Right to Counsel

■ ¶ 18 Waterfield next contends that the district court failed to adequately determine whether he "knowingly, intelligently, and voluntarily waived his right to counsel." He claims this failure constitutes plain error. The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court. *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

■ ¶ 19 When a defendant elects to represent himself, the trial court should make him "aware of the dangers and disad-

---

8.  Waterfield makes no attempt to explain how the differences of opinion between himself and counsel created a conflict that could not be reconciled. *Cf. State v. Scales,* 946 P.2d 377, 382–83 (Utah Ct.App.1997) (holding that even "intense animosity" between a defendant and appointed counsel did not constitute good cause for substitution of counsel, because "[t]o result in the denial of a defendant's right to counsel, such animosity may not be based solely on the defendant's illegitimate complaints or subjective perception of events").

9.  We stress, however, that "when a defendant expresses dissatisfaction with counsel, a trial court *must* make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints." *State v. Lovell,* 1999 UT 40, ¶ 27, 984 P.2d 382 (emphasis added) (citation and internal quotation marks omitted). As the *Vessey* court noted, "pretrial scrutiny not only reduces the likelihood of a post conviction ineffective assistance claim, but also creates a record that reviewing courts can rely upon when an ineffectiveness issue is raised on appeal." *State v. Vessey,* 967 P.2d 960, 964 (Utah Ct.App.1998).

vantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citation and internal quotation marks omitted). Thus, when a defendant attempts to waive his right to counsel, "it is the trial court's duty to determine if this waiver is a voluntary one which is knowingly and intelligently made." *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987). "[A] colloquy on the record between the court and the [defendant] is the preferred method of ascertaining the validity of a waiver because it [ensures] that defendants understand the risks of self-representation." *Id.*

■ ¶ 20 Waterfield acknowledges that the district court conducted a colloquy but claims it was inadequate because it did not conform precisely to the *Frampton* court's guidance concerning a proper colloquy.[10] That guidance is not, however, a script that must be recited verbatim. The Utah Supreme Court stressed that the model questions were "a guide" to "the most efficient means by which appeals may be limited." *Id.* at 187 & n. 12. The court also noted that, even "absent such a colloquy, [an appellate court] will look at any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se." *Id.* at 188. Accordingly, the guidance provided in *Frampton* is not mandatory and its phrasing not talismanic. Nevertheless, Waterfield points to several parts of the colloquy in his case that differed from the questions enumerated in *Frampton* and argues that the failure to follow that guidance rendered the district court unable to ascertain whether his waiver was knowing, intelligent, and voluntary.

■ ¶ 21 Waterfield first asserts that the district court did not determine whether he understood "the possible importance of the PSI [Report]" to future pardon or parole proceedings. He argues that the court erred in not asking three specific questions from *Frampton*. Those questions ask the defendant (1) if he understands the crimes with

which he has been charged, (2) if he understands the maximum penalty for each crime, and (3) if he understands that the court could order consecutive sentences. *Id.* at 187 n. 12.

¶ 22 Here, Waterfield had already pleaded guilty, been sentenced, and had his sentence reviewed and upheld on appeal. He therefore already knew the crimes with which he had been charged, knew what sentence had been imposed, and knew whether the court had ordered consecutive sentences. Additionally, the district court asked him, "Do you understand the convictions that have been entered in this particular matter against you and what they consist of?" and "Do you understand the gravity of those and the seriousness of those?" Waterfield answered affirmatively to both questions. Moreover, it is hard to see how Waterfield could plausibly argue that he was unaware of the parole and probation consequences of the PSI Report when his case was remanded specifically "because the statements in [the PSI Report] may be utilized in future settings, such as parole hearings." *Waterfield I*, 2011 UT App 27, ¶ 11, 248 P.3d 57.

■ ¶ 23 Waterfield next asserts that the district court failed to determine whether he understood that the Utah Rules of Evidence would apply to the evidentiary hearing. Two questions from *Frampton* are pertinent: "Are you familiar with the … Rules of Evidence?" and "You realize, do you not, that the … Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?" *Frampton*, 737 P.2d at 187 n. 12 (ellipses in original). Here, the district court asked Waterfield whether he was "familiar with the Utah Rules of Evidence at all"; Waterfield responded that he had "read through them before" but did not currently have a copy. The district court then asked Waterfield if he realized "that the Utah Rule[s] of Evidence [were] going to apply to the proceedings." Waterfield replied that he

---

**10.** The guidance is provided in an essentially-verbatim block quote from a federal bench book. *State v. Frampton*, 737 P.2d 183, 187 n. 12 (Utah 1987) (quoting Federal Judicial Center, Bench Book for United States District Court Judges §§ 1.02–2 to –5 (3d ed.1986)). For brevity and convenience, we cite to *Frampton's* footnote twelve without noting the omission of citations and internal quotation marks.

understood that "they're going to apply." On appeal, Waterfield does not explain how this portion of the colloquy was inadequate or how the court was prevented from determining that his waiver was knowing, voluntary, and intelligent. Nor do we see how it was inadequate.

¶ 24 Waterfield also asserts that the court failed to determine whether his decision to proceed pro se was entirely voluntary. *Frampton* suggests that a trial court ask the defendant whether, in light of all the difficulties of self-representation, the defendant still wishes to proceed pro se and whether that decision is "entirely voluntary." *State v. Frampton*, 737 P.2d 183, 187 n. 12 (Utah 1987). Here, the district court opined that Waterfield would be better represented by counsel and then asked Waterfield, "[I]s it still your desire to represent yourself in this matter?" Waterfield replied, "It is, your Honor." The district court did not specifically ask whether that decision was voluntary. However, Waterfield's motions and actions exhibit the hallmarks of voluntariness. *See id.* at 188 ("[A]bsent such a colloquy, [an appellate court] will look at any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se."). His first motion requested that he be allowed to proceed pro se and did not request substitute counsel. His second motion requested substitute counsel from outside the Second District but also stated that he was prepared to proceed pro se. Waterfield's third motion assumed that he had a right to counsel but stated that he wished to proceed pro se if he could not have substitute counsel from outside the Second District. The court asked him at both the beginning and the end of the colloquy whether it was still his desire to proceed pro se and, at both times, Waterfield stated that it was. The record demonstrates that it was Waterfield's strong and voluntary desire to proceed pro se.

¶ 25 Waterfield further asserts that the district court should have "strongly urge[d]" him not to proceed pro se. Again, he relies on *Frampton*, which suggests that the court should then "say to the defendant something to this effect":

> I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the Rules of Evidence. I would strongly urge you not to try to represent yourself.

*Id.* at 187 n. 12. Here, the district court stated that, in its opinion, Waterfield "would be far better defended by a trained lawyer"; that it was "unwise, quite frankly," for Waterfield to continue pro se; and that Waterfield was not sufficiently "familiar with the law, ... court procedures, the Utah Rules of Evidence, or the Utah Rules of Criminal Procedure." It then asked Waterfield, "[I]n light of that, is it still your desire to represent yourself in this matter?" Waterfield replied, "It is, your Honor." This portion of the colloquy sufficiently tracks the form and content of the relevant admonition from *Frampton. See id.*

¶ 26 Waterfield next asserts that the district court "failed to consider the appointment of standby counsel." The guidance in *Frampton* states that a trial court "should consider the appointment of standby counsel to assist the defendant." *Id.* The record here does not indicate whether the district court did so. As we have noted, the questions in *Frampton* are not mandatory. Moreover, Waterfield does not explain how failure to consider standby counsel inhibited the district court's ability to determine whether Waterfield's waiver was knowing, intelligent, and voluntary.

¶ 27 Waterfield further argues that his waiver was not "entirely voluntary," because the district court had already refused to appoint substitute counsel. He thus claims that "the court was precluded from and did not find that [Waterfield] had knowingly and voluntarily waived his right to counsel." The district court had refused to substitute counsel immediately before conducting the waiver colloquy and was therefore aware of the resulting potential to place Waterfield in a position of having to choose between proceeding with counsel with whom he believed he had a conflict or proceeding pro se. *See State v. Pursifell*, 746 P.2d 270 (Utah Ct.App. 1987); *see also State v. Bakalov*, 1999 UT 45,

¶ 20, 979 P.2d 799. Although we have cautioned against saddling defendants with a choice between ineffective counsel and no counsel at all, that is not the case presented here. As we have noted above, *supra* ¶¶ 15–17, Waterfield has not demonstrated that good cause—such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict—existed for substitution of counsel. Moreover, prior to the denial of substitute counsel, Waterfield had made two requests to proceed pro se and had informed the court that he was prepared to do so. On this record, we conclude that the district court could find that Waterfield's waiver was voluntary. *See Bakalov,* 1999 UT 45, ¶ 20, 979 P.2d 799 (holding that a defendant's decision to proceed pro se was voluntary despite having to choose between that course and proceeding with counsel with whom he had expressed dissatisfaction, because the defendant had not shown good cause for substitution of counsel).

¶ 28 The colloquy conducted by the district court was sufficient to fulfill the court's "duty to determine if [Waterfield's] waiver [was] a voluntary one which [was] knowingly and intelligently made." *Frampton,* 737 P.2d at 187. We therefore hold that the district court did not plainly err. *See State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

IV. Resolution of Waterfield's Objections

[13] ¶ 29 Waterfield next contends that the district court failed to properly consider and resolve Waterfield's objections to the PSI Report. Specifically, he asserts that the district court "failed to make the requisite determination of accuracy" when it refused to make certain changes based on his objections. "Whether the trial court properly complied with a legal duty to resolve on the record the accuracy of contested information in sentencing reports is a question of law that we review for correctness." *State v. Maroney,* 2004 UT App 206, ¶ 23, 94 P.3d 295 (citation and internal quotation marks omitted).

¶ 30 Section 77–18–1(6) of the Utah Code outlines the procedure for resolving alleged inaccuracies in presentence investigation reports. Specifically, it directs the trial court to "make a determination of relevance and accuracy on the record." Utah Code Ann. § 77–18–1(6)(a) (LexisNexis 2012); *see also Waterfield I,* 2011 UT App 27, ¶ 8, 248 P.3d 57 ("The sentencing judge is required to consider the party's objections to the report, make findings on the record as to whether the information objected to is accurate, and determine on the record whether that information is relevant to the issue of sentencing." (citation and internal quotation marks omitted)).

¶ 31 Here, the district court went through Waterfield's objections one by one at the PSI Report evidentiary hearing. Nevertheless, Waterfield claims that the court failed to fully address two of his objections. Waterfield's first allegedly unresolved objection was to a section of the PSI Report that described his Level of Service Inventory (LSI) score as "intensive." The underlying numerical score had been calculated in July 2008. At the evidentiary hearing, Waterfield claimed he had not taken an LSI assessment in 2008. The State explained at the hearing that defendants are not present during follow-up assessments because an updated LSI score is calculated using information from Adult Probation and Parole's records such as criminal history, employment, drug usage, and mental health status.[11] After hearing extensively from both the State and Waterfield, the district court ultimately declined to remove the descriptor "intensive," stating, "I think based on what the [numerical] assessment was, that is an appropriate [narrative] term to be used there."

¶ 32 Although a trial court is required to "make a determination of relevance and accuracy on the record," nothing in the statute requires the trial court to use specific words such as "relevant" or "accurate." *See* Utah Code Ann. § 77–18–1(6)(a). We read the

---

11. Waterfield then asked for a copy of the paperwork that led to his LSI score. The State noted that the paperwork was available from the Department of Corrections via a government records request, that Waterfield's counsel had previously made such a request "maybe two or three months ago," and that the Department of Corrections had denied that request. Neither the denial of that records request nor the district court's decision to proceed with the hearing in the absence of the requested documents is at issue in this appeal.

district court's use of the word "appropriate" to mean that it found the descriptor "intensive" to be accurate.

¶ 33 Waterfield also objected to portions of the criminal history section of the PSI Report. The statute provides that "the court shall make a determination of relevance *and* accuracy." *Id.* (emphasis added). Waterfield asserts that "the court failed to make the requisite determination of accuracy" because, although it ruled that his proposed changes to the report were not relevant, it did not explicitly rule on the accuracy of the challenged section. Waterfield does not acknowledge that the district court engaged in an extensive review of the accuracy of Waterfield's objections—an exercise that consumed the next fourteen pages of the hearing transcript. Moreover, Waterfield does not point to record evidence that suggests the final version of the criminal history section contained any inaccurate information; his challenge is to the form of the district court's ruling rather than its substance. Accordingly, because Waterfield has not demonstrated that the PSI Report was in any way factually inaccurate as a result of the district court's ruling, we can see no way in which his substantial rights were impacted. *See* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶ 34 We conclude that Waterfield has not shown error in the district court's ruling on the description of his LSI score as "intensive." Waterfield has also failed to show that any harm resulted from the district court's failure to make an explicit determination as to the accuracy of the criminal history section of the PSI Report.

### V.   Legality of Sentence

¶ 35 Finally, Waterfield contends that the district court imposed an illegal sentence on him due to its reliance on "inaccurate and incomplete information." In *Waterfield I,* we affirmed Waterfield's sentence but remanded "for the limited purpose" of resolving his objections to the PSI Report on the record. 2011 UT App 27, ¶ 11, 248 P.3d 57.

¶ 36 Waterfield asserts that his sentence was "both illegal and imposed in an illegal manner" because the PSI Report used by the district court at his sentencing was incomplete. He argues that the PSI Report was incomplete because it did not include "any findings from any screening or any assessment." He cites section 77–18–1(5)(d) of the Utah Code, which provides that a presentence investigation report shall include "findings from any screening and any assessment of the offender conducted under Section 77–18–1.1." Utah Code Ann. § 77–18–1(5)(d) (LexisNexis 2012); *see also id.* § 77–18–1.1(3) ("The findings from any screening and any assessment conducted under this section shall be part of the presentence investigation report submitted to the court before sentencing of the offender.").

¶ 37 We note that the district court did not use the PSI Report as part of Waterfield's initial sentencing. *See Waterfield I,* 2011 UT App 27, ¶¶ 5, 8, 10 n. 4, 248 P.3d 57. In *Waterfield I,* we stated that due to the procedural history of this case, the PSI Report had become, in essence, a "post-sentence report" because it was prepared after the court initially pronounced Waterfield's sentence. *Id.* ¶ 10 n. 4. As we stated in *Waterfield I,* "we fail to see how addressing alleged inaccuracies in what essentially was a post-sentence report would have somehow led to a different outcome for [Waterfield]." *Id.*

¶ 38 Nevertheless, to the extent that the PSI Report may have colored any sentencing decisions, we conclude that Waterfield has failed to demonstrate that any required information was omitted from it. Although Waterfield argues that the PSI Report neglected to include "any findings from any screening or any assessment," he does not indicate what screening or assessment should have been included. An assessment under Utah Code section 77–18–1.1 "has the same meaning as in Section 41–6a–501." Utah Code Ann. § 77–18–1.1(1)(a). An assessment under section 41–6a–501 "means an in-depth clinical interview with a licensed mental health therapist" to determine if the person is in need of substance-abuse treatment or an educational series. *Id.* § 41–6a–501 (2010).

¶ 39 On appeal, Waterfield does not claim that he was interviewed by a licensed therapist for that purpose or point us to any

record evidence of such an interview. Consequently, Waterfield's challenge to the legality of his sentence fails because he has not shown that the PSI Report was incomplete.[12]

¶ 40 Affirmed.

12. The State asserts that principles of res judicata would have prevented the district court from modifying the sentence, while Waterfield contends that Utah Rule of Criminal Procedure 22(e) would have permitted the court to correct the sentence. Res judicata applies as between multiple cases while the law of the case doctrine applies to successive proceedings within one case. *Cf. IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26 & n. 20, 196 P.3d 588 (noting that while "the law of the case doctrine acts much like the doctrine of res judicata … but within a single case," "they should be viewed as distinct doctrines"). However, because we conclude that the court did not rely on "inaccurate and incomplete information," as Waterfield alleges, we need not address those arguments.