2016 UT App 22

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL PIYAPATANA ABELON,
Appellant.

Opinion
No. 20140508-CA
Filed February 4, 2016

Second District Court, Farmington Department
The Honorable David M. Connors
No. 131700855

Scott L. Wiggins, Attorney for Appellant

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUSTICE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

PEARCE, Justice:

¶1    Michael Piyapatana Abelon appeals his convictions on six counts of sexual exploitation of a minor, each a second degree felony. We affirm Abelon's convictions and sentence but remand the case to the district court for further proceedings to resolve Abelon's objections to his presentence investigation report under Utah Code section 77-18-1(6)(a).

---

1. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

BACKGROUND

¶2    The State charged Abelon after the Internet Crimes Against Children Task Force (ICAC) discovered videos and images of child pornography on Abelon's laptop computer and hard drive. ICAC investigators found sexually explicit images of children on each device. The laptop also contained six pornographic videos depicting children. Investigators were unable to access the files on a second laptop they had seized from Abelon's apartment because of an encryption program on the computer. After Abelon was charged, the district court appointed a public defender to serve as Abelon's counsel.

¶3    As his case worked its way towards trial, Abelon complained to the district court multiple times about his appointed counsel. About eight months before trial, Abelon asked the district court to appoint him a new attorney. Abelon alleged that his counsel was not doing enough to prepare his defense and that counsel was not communicating with him to his satisfaction. According to Abelon, he had lost confidence in his counsel and a conflict of interest therefore existed. At a hearing on Abelon's complaints, appointed counsel detailed his efforts to communicate with Abelon and to prepare his defense. The district court ruled that it had "not heard anything that rises to the level of an actual conflict that would allow [the court] to change counsel."

¶4    Two weeks later, Abelon again sought replacement counsel. Abelon again asserted a loss of trust and confidence in his counsel and alleged that his attorney was not adequately communicating with him. At a hearing, counsel again outlined his efforts to the district court. Counsel's supervisor at the public defender's office also testified, expressing his opinions that Abelon's dissatisfaction with his counsel's performance did not rise to the level of a conflict of interest and that Abelon's counsel had "done the things [he] should have done by this point [in the

proceedings].” The supervisor also expressed a willingness to meet with Abelon to discuss his concerns. The district court again declined to replace Abelon’s counsel.

¶5      Six months later, at a pretrial hearing, Abelon yet again expressed dissatisfaction with his counsel, claiming the existence of “an atmosphere of mistrust, distrust, and just basically irreconcilable differences.” He complained that his counsel was not prepared and had failed to follow through on various requests that Abelon had made. The district court again told Abelon that the grounds he raised did not warrant substituting counsel, and the court expressed its confidence that Abelon’s counsel could provide a zealous defense. Abelon’s counsel also placed on the record an extensive list of his efforts in preparing Abelon’s defense, and he assured the court that he was fully prepared for trial.

¶6      Two weeks later, at the final pretrial hearing, the court informed counsel for both parties that Abelon had filed a handwritten document in the district court entitled, “Writ of Certiorari.” In the document, Abelon requested a stay of proceedings, a review of the transcript for ineffective assistance of counsel and judicial bias, the appointment of new counsel from outside the public defender’s office, and disqualification of the district court judge. The district court treated the pleading as a motion to replace Abelon’s appointed counsel.

¶7      The district court reminded Abelon that it had recently declined his previous request for new appointed counsel and inquired, “Is there anything else that’s come up new since the last time we talked regarding your relationship with [counsel]?” Abelon responded that they were “the same issues” but again asserted that those ongoing issues warranted the appointment of new counsel. The district court then heard from Abelon’s counsel, who reiterated an extensive list of his trial preparations and expressed his opinion that Abelon’s motion was a stall

tactic. The district court allowed Abelon to respond to his counsel's statement. Abelon stated,

> It's very misleading from what [counsel] has been saying. I've requested things, they have not been done. If you want specifics then that would require me to specify our talks I believe that are confidential. But if you wish for me to name specific things that I have been requesting then the prosecution would have that advantage that I think would be unfair.

The district court again denied Abelon's motion for appointment of new counsel and informed Abelon that his choices remained to proceed with his existing counsel, to retain private counsel, or to represent himself. The district court explained, "[T]here is not a fourth option to go forward with a different public defender. We've had that discussion at least twice now, nothing new has come up in that regard and so I would simply deny that request again." In light of the options available to him, Abelon stated that he was "forced" to have existing counsel continue to represent him.

¶8     Abelon's case proceeded to a jury trial, at which Abelon was represented by his originally appointed counsel. At trial, the parties stipulated that the six videos found on Abelon's laptop constituted child pornography. Abelon's primary defense argument was that the State could not prove that Abelon had viewed the child pornography. The State's witnesses conceded on cross-examination that they did not know who was sitting at the computer when the files containing child pornography were viewed. Nevertheless, the jury convicted Abelon as charged.

¶9     At Abelon's sentencing, the district court inquired if there were any corrections to be made to the presentence investigation report (PSR). Abelon and his counsel alleged that there were

multiple inaccuracies in the PSR. Abelon summarizes these alleged inaccuracies in his appellate brief, stating that the PSR

> (1) inaccurately reflects the number of videos located by the authorities upon seizing and examining the items retrieved from his residence, (2) inappropriately requests the court to "order [Abelon] to pay all accrued back child support", (3) inaccurately reflects that authorities found videos and photographs on [Abelon's] computers of a sexual nature involving [Abelon's] children, (4) inaccurately indicates that investigators discovered files of child pornography "locked with sophisticated encryption codes and passwords", (5) inaccurately states that [Abelon] "refused to cooperate with police and providing them with these passwords", (6) inaccurately indicates the name and content of a file by stating, "Another example was a file titled; [']beautiful 8 yr old girl blow job.AVI.[']", which is actually a registry entry, (7) inaccurately refers to a CD being discovered, "containing a 31 page story about incest", which incorrectly reflects the content of the CD and that it is illegal, (8) inaccurately indicates that the video depicted his children in a sexual nature, (9) inaccurately reflects that [Abelon] kept his "children isolated in the home and frequently would not allow them to go outside to play with other children", (10) inaccurately reflects that one of [Abelon's] children was a victim awarded some sort of a claim, and (11) inaccurately indicates that [Abelon] "failed to disclose he owes $25,574.13 in back child support".

(Footnotes and citations omitted.) The State conceded at sentencing that Abelon had "some points about the factual

statements" and urged the court to "disregard anything in [the PSR] that [was] not consistent with what [the court] saw at trial." However, the district court never made express findings on the accuracy and relevance of the alleged inaccuracies that Abelon had challenged.

¶10    The district court sentenced Abelon to six concurrent prison terms of one to fifteen years. The court suspended those terms of imprisonment, placed Abelon on thirty-six months of probation, and ordered him to serve 365 days in jail with credit for 275 of the 362 days he had already served. The district court also imposed a $1,000 fine and ordered restitution to be held open for twelve months. Abelon appeals.

ISSUES AND STANDARDS OF REVIEW

¶11    Abelon raises three issues on appeal. First, Abelon argues that the district court erred when it failed to reasonably inquire into his dissatisfaction with his appointed counsel. "We review [w]hether a trial court should have inquired further into a defendant's dissatisfaction with counsel . . . for an abuse of discretion." *State v. Waterfield*, 2014 UT App 67, ¶ 10, 322 P.3d 1194 (alteration and omission in original) (citation and internal quotation marks omitted). Second, Abelon argues that the district court erred by failing to resolve his objections to the PSR as required by Utah Code section 77-18-1(6)(a). Whether the district court complied with its legal duties under section 77-18-1(6)(a) "is a question of law that we review for correctness." *State v. Veteto*, 2000 UT 62, ¶ 13, 6 P.3d 1133. Finally, Abelon argues that his trial counsel provided him with ineffective assistance by failing to affirmatively ask the district court to make findings under section 77-18-1(6)(a). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 22, 247 P.3d 344 (citation and internal quotation marks omitted).

ANALYSIS

I. Abelon's Request for Substitute Counsel

¶12 Abelon first argues that the district court failed to conduct an adequate inquiry into his expressed dissatisfaction with his appointed counsel. We have held that when a defendant expresses dissatisfaction with his or her appointed counsel, the district court has an "affirmative obligation to investigate" the reasons for the defendant's dissatisfaction. *Waterfield*, 2014 UT App 67, ¶ 11; *see also State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App. 1987).

> [W]hen dissatisfaction is expressed, the court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right to counsel would be violated but for substitution.

*Pursifell*, 746 P.2d at 273. In evaluating a defendant's complaints, "the court must balance the potential for last minute delay and the propensity for manipulation of the system against the competing concern about the likely inability of indigent defendants to articulate and communicate their dissatisfaction in a setting which most laypersons find quite intimidating." *Id.*

¶13 As stated above, the district court addressed Abelon's dissatisfaction with counsel on four separate occasions. *See supra* ¶¶ 3–7. On appeal, Abelon challenges only the district court's handling of his final request for substitution of counsel. He asserts that the district court denied his final motion for

substitution of counsel "[w]ithout inquiry," relying solely on the grounds upon which the court had denied his previous requests.

¶14    We disagree with Abelon's characterization of what transpired below. Having addressed Abelon's complaints about his appointed counsel on three previous occasions, the district court asked Abelon, "Is there anything else that's come up new since the last time we talked regarding your relationship with [appointed counsel]?" Abelon admitted that his latest request was based on "the same issues" as his previous requests.[2]

¶15    The district court then allowed Abelon to reiterate his complaints about his counsel's performance. Abelon told the court, "I've asked [counsel] for several things to be done and they have not been done." Abelon complained that his counsel had not given him information he had requested and had not "pursued the things [Abelon had] requested regarding [his] case," resulting in delays and the likelihood of Abelon going to trial without the requested actions having been taken.

¶16    In response, Abelon's counsel pointed out that Abelon was "just talking in generalities." Abelon's counsel also provided a lengthy list of his trial preparations and attempts to satisfy Abelon's requests. Counsel's statements echoed those that both he and his supervisor had made in response to Abelon's

---

2. If the district court properly handled the prior requests with adequate inquiries into Abelon's dissatisfaction, it follows that the district court adequately investigated Abelon's final request by assuring itself that Abelon was not raising any new complaints that the district court had not already rejected as grounds for substituting counsel. Abelon does not challenge the district court's handling of his first three requests for new appointed counsel, and we presume that the district court did, in fact, properly handle those prior requests.

previous complaints. The district court then invited Abelon to have "the final word," whereupon Abelon repeated, "I've requested things, they have not been done." Abelon then informed the court that he could not provide further detail without divulging confidential attorney–client matters.

¶17 We cannot say that the district court abused its discretion in declining to conduct further inquiry into Abelon's dissatisfaction. The district court had explored Abelon's complaints in addressing his three prior requests for new counsel, and Abelon admitted to the court that his fourth request was based on "the same issues" he had previously raised. Under the circumstances, the district court apprised "itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney [had] deteriorated to the point that sound discretion require[d] substitution." *See State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App. 1987). We therefore reject Abelon's argument that the district court erred by failing to adequately inquire into his dissatisfaction with his appointed counsel.[3]

---

3. Abelon also suggests that, even without the benefit of further inquiry by the district court, his complaints demonstrated "that his dissatisfaction with appointed trial counsel rose to a constitutional level, requiring the appointment of substitute counsel." However, Abelon has failed to establish that the generalized complaints he asserted to the district court entitled him to new counsel as a matter of law. *See State v. Waterfield*, 2014 UT App 67, ¶ 10, 322 P.3d 1194 ("[W]e determine as a matter of law whether a trial court's refusal to appoint substitute counsel violated a defendant's Sixth Amendment right to counsel.").

II. Abelon's Objections to the PSR

¶18    Abelon's remaining arguments pertain to objections that he raised at sentencing regarding alleged inaccuracies in the PSR. Abelon argues that the district court failed to resolve his objections with "specific findings on the record," as required by Utah Code section 77-18-1(6)(a). *See State v. Veteto*, 2000 UT 62, ¶ 15, 6 P.3d 1133; *see also* Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2015). Abelon also claims that his counsel provided him with ineffective assistance by failing to request specific findings. We conclude that the district court erred by failing to resolve Abelon's objections on the record, as required by section 77-18-1(6)(a).

¶19    Utah Code section 77-18-1(6)(a) provides,

> The department shall provide the [PSR] to the defendant's attorney, or the defendant if not represented by counsel, the prosecutor, and the court for review, three working days prior to sentencing. Any alleged inaccuracies in the [PSR], which have not been resolved by the parties and the department prior to sentencing, shall be brought to the attention of the sentencing judge, and the judge may grant an additional 10 working days to resolve the alleged inaccuracies of the report with the department. If after 10 working days the inaccuracies cannot be resolved, the court shall make a determination of relevance and accuracy on the record.

Utah Code Ann. § 77-18-1(6)(a). Thus, when a defendant disagrees with the accuracy of items contained in a PSR, he or she may bring those objections to the attention of the sentencing judge. Once a defendant alleges to the district court that a PSR contains unresolved "factual inaccuracies," the court "*must* do three things: first, consider the objection raised; second, make

findings on the record regarding the accuracy of the information at issue; and third, determine on the record the relevance of that information as it relates to sentencing." *State v. Monroe*, 2015 UT App 48, ¶ 6, 345 P.3d 755.

¶20     We agree with Abelon that the district court failed to make findings on the record as section 77-18-1(6)(a) requires. Although the district court appears to have considered Abelon's objections, "it fell short on its second and third obligations when it failed to indicate on the record its determinations of accuracy and relevance." *See id.* We have held that such findings must be made on the record because the PSR "may be utilized in future settings, such as parole hearings." *State v. Waterfield*, 2011 UT App 27, ¶ 11, 248 P.3d 57. We therefore remand this matter to the district court "with instructions that it expressly resolve [Abelon's] objections in full compliance with section 77-18-1(6)(a)."[4] *See State v. Jaeger*, 1999 UT 1, ¶ 45, 973 P.2d 404.

¶21     Abelon additionally argues that the district court's noncompliance with Utah Code section 77-18-1(6)(a)—which Abelon alleges resulted from his counsel's ineffective assistance—entitles him to resentencing. However, Abelon's request for resentencing is limited to his general assertion that the district court sentenced him based on "incomplete, inaccurate, and misleading information." Although the district court did not make the required factual findings, we see no basis to conclude that Abelon's sentence was materially affected by the matters that Abelon challenged in his objections. This is particularly so in light of the State's request at sentencing that the district court ignore anything in the PSR that was not

---

4. Because the need for remand is apparent on the record of this case, we decline to address whether Abelon might be entitled to the same remedy based on his allegation that he received ineffective assistance of counsel.

consistent with the evidence at trial. In short, "[w]e are not convinced that the district court's failure to resolve [Abelon's] objections requires reversal and resentencing."[5] *See Monroe*, 2015 UT App 48, ¶ 8. Nevertheless, on remand, "[i]f resolution of the objections affects the [district] court's view of the appropriate sentence, the [district] court may then revise the sentence accordingly." *See State v. Maroney*, 2004 UT App 206, ¶ 31, 94 P.3d 295; *accord State v. Reddish*, 2006 UT App 376U, para. 4 (per curiam) ("Allowing the district court to revisit the sentences after resolving the alleged inaccuracies in the [PSR] gives appropriate deference to the district court's sentencing function.").

CONCLUSION

¶22 We conclude that under the circumstances presented by Abelon's fourth request for substitution of appointed counsel, the district court adequately inquired into Abelon's dissatisfaction with his appointed counsel. We therefore affirm Abelon's convictions. However, we also conclude that the district court erred when it failed to make the statutorily required findings to resolve Abelon's objections to the PSR. We remand the matter to the district court for resolution of Abelon's objections "in full compliance with [Utah Code] section 77-18-1(6)(a)." *See State v. Jaeger*, 1999 UT 1, ¶ 45, 973 P.2d 404.

───────────

5. We are similarly not convinced that Abelon is entitled to resentencing based on his argument that his counsel provided him with ineffective assistance.